**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee*,

　　　　v.

ANTOINE LAMONT JOHNSON, AKA
O Killer, AKA OK,
　　　　　　*Defendant-Appellant.*

No. 10-50401

D.C. No.
2:05-cr-00920-
RSWL-2

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee*,

　　　　v.

MICHAEL DENNIS WILLIAMS, AKA
Baby Treystone, AKA Treystone,
　　　　　　*Defendant-Appellant.*

No. 10-50407

D.C. No.
2:05-cr-00920-
RSWL-1

OPINION

Appeal from the United States District Court
for the Central District of California
Ronald S.W. Lew, Senior District Judge, Presiding

Argued and Submitted
February 3, 2014—Pasadena, California

Filed September 12, 2014

Before: Mary M. Schroeder and Richard R. Clifton, Circuit Judges, and John R. Tunheim, District Judge.[*]

Opinion by Judge Schroeder

---

**SUMMARY**[**]

---

**Criminal Law**

The panel affirmed Antoine Johnson's and Michael Williams's convictions for armed robbery and murder in a case in which the district court admitted, pursuant to the forfeiture exception to the Confrontation Clause, an unavailable witness's out-of-court testimonial statements to the police.

The forfeiture exception applies when the defendant is responsible for the witness being unavailable. The panel held that preponderance of the evidence remains, after *Crawford v. Washington*, 541 U.S. 36 (2004), the standard by which the Government must prove that the defendant intentionally secured the witness's absence. The panel therefore rejected Johnson's contention that the applicable standard is clear and convincing evidence. The panel held that the district court did not err in concluding that the Government produced

---

[*] The Honorable John R. Tunheim, United States District Judge for the District of Minnesota, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

sufficient evidence to demonstrate that Johnson had intentionally prevented the witness from testifying.

The panel held that the district court did not abuse its discretion in denying Williams's request for severance before Johnson's attorney elicited testimony from the investigating officer that the witness had identified Williams, where the witness's statements were not strongly inculpatory of Williams and there is no reason to conclude that the district court's limiting instruction was insufficient.

The panel rejected as meritless the defendants' claims of several additional trial errors.

## COUNSEL

Benjamin L. Coleman, Coleman & Balogh LLP, San Diego, California; Ethan A. Balogh (argued), Coleman & Balogh LLP, San Francisco, California, for Defendant-Appellant Antoine Lamont Johnson.

John C. Lemon (argued), San Diego, California, for Defendant-Appellant Michael Dennis Williams.

André Birotte Jr., United States Attorney, Robert E. Dugdale, Karen I. Meyer, and Elizabeth R. Yang (argued), Assistant United States Attorneys, Los Angeles, California, for Plaintiff-Appellee United States of America.

**OPINION**

SCHROEDER, Circuit Judge:

The world of evidence was shaken about ten years ago when the Supreme Court ruled that out-of-court "testimonial" statements of unavailable witnesses can be admitted only if they have been subject to cross-examination, regardless of the indicia of reliability. *Crawford v. Washington*, 541 U.S. 36 (2004). This criminal appeal presents an issue of first impression for our circuit, post-*Crawford*.

The issue concerns the so-called "forfeiture exception" to the Confrontation Clause of the Sixth Amendment. That exception applies when the defendant is responsible for the witness being unavailable. We must decide whether proof of the defendant's responsibility for the witness's absence must be shown by a preponderance of the evidence, as provided by Rule 804(b)(6) of the Federal Rules of Evidence, or, in light of *Crawford* and its progeny, by clear and convincing evidence.

The appellants are Antoine Johnson and Michael Williams, who appeal their convictions for armed robbery and murder. They each raise a number of issues from their joint trial for the robbery of an armored truck and murder of a guard, for which each received a life sentence. We affirm.

With respect to the forfeiture exception, we join the circuits that have decided the issue since *Crawford* in holding that the standard has not changed and the provisions of the Rule continue to apply. *See Perkins v. Herbert*, 596 F.3d 161, 167 (2d Cir. 2010); *see also United States v. Dinkins*, 691 F.3d 358, 383 (4th Cir. 2012). That is the clear

implication of the Supreme Court's post-*Crawford* opinion in *Davis v. Washington*, 547 U.S. 813, 833 (2006), acknowledging that the circuits are following the standard set forth in the evidentiary rule. It is also the assumption underlying *Giles v. California*, 554 U.S. 353 (2008), as expressly noted in Justice Souter's concurrence, 554 U.S. at 379.

## FACTS

On March 1, 2004, four assailants ambushed an armored truck as it was making a cash delivery to a Bank of America in South Central Los Angeles. One of the assailants was wearing a Rastafarian wig and at least one was wearing gloves. During the robbery, one of the armored truck security guards was shot and killed. On June 19, 2007, appellants Antoine Johnson and Michael Williams, both of whom had affiliations with a group known as the Hoover Street Gang, were indicted by a grand jury for their involvement in the robbery and murder. The charges carried a maximum possible penalty of death.

At trial, the Government introduced several out-of-court statements made by an informant, Veronica Burgess. These statements form the basis for the Sixth Amendment issues in this appeal.

Burgess had come forward to police in 2004, claiming that, while eating lunch at a restaurant in Watts, she had overheard several Hoover gang members planning an armored truck heist. She identified Johnson from a photo spread as one of the participants, and later testified to this effect before the grand jury. Burgess also picked Williams out of a photo-lineup on one occasion, although in a later

interview, she confused him with a different individual. Burgess was to be an important witness at trial, but shortly before trial the Government was unable to locate her, even after checking her public records and conducting extensive surveillance of her known residences.

The district court in this case permitted the Government, after a pretrial hearing, to introduce her statements against Johnson under the forfeiture exception to the hearsay rule. To support admissibility, the Government contended that Johnson had threatened Burgess in order to prevent her from testifying. In the pretrial hearing, the Government presented evidence that Burgess had received death threats from members of the Hoover gang. Her live-in boyfriend, Patrick Smith, told police that the Hoovers had placed a "hit" on Burgess for "snitching on a boy fighting death." Smith also told police that the "mother of one of the guys in jail looking at death" had contacted Smith trying to find Burgess. Burgess then disappeared and had no more contact with police until after the trial.

The Government's position in the pretrial hearing was that there was sufficient evidence to infer that the "boy fighting death" was in fact Johnson, who had informed members of the Hoover gang that Burgess was set to testify against him. Burgess began receiving threats the day after defense attorneys were permitted to disclose the identity of the witnesses to the defendants. On that same day, Johnson's counsel visited him in prison. Johnson's attorney had stated in a previous pretrial conference that Johnson was aware of the fact that his counsel could disclose the identities of witnesses forty-five days prior to trial and was eager to have this information.

The Government posited that, once Johnson learned from his lawyer of Burgess's intent to testify, he informed members of the Hoover gang who then threatened Burgess in order to prevent her from testifying. Though Johnson was confined in a "Special Housing Unit" at the time and had lost his phone privileges, a prison guard declared that inmates in the Special Housing Unit routinely communicate with each other by speaking through the air vents and passing written messages, called "kites," through the plumbing system. The guard also noted that he had seen Johnson communicate with other inmates in this manner and that he was "constantly" doing so. The Government presented further evidence demonstrating that inmates are generally able to communicate with those on the outside by various means.

The Government pointed out that Johnson not only had the means to threaten Burgess, but that he alone had the motive. Burgess had consistently identified Johnson as being present at the meeting in Watts where the robbery was planned, but she failed to consistently identify Williams. Accordingly, Williams had little reason to threaten her. While Burgess had identified other individuals whom the government was pursuing as suspects, only Johnson was currently facing the death penalty. Finally, the Government established that Johnson's mother was involved with a known Hoover gang member, suggesting not only that Johnson had close ties to the Hoover gang, but also that his mother was the person looking for Burgess who had contacted Patrick Smith.

Johnson, in response, denied that he threatened Burgess. His counsel insisted that, while in confinement, he had no means of communicating with Burgess, or anyone else on the outside. Counsel also noted that there were several other suspects, and they also had a motive to threaten Burgess.

Johnson speculated that these other suspects had learned of Burgess's identity when his lawyers began conducting interviews within the community in preparation for his trial. Johnson also questioned whether Burgess had actually been threatened. Johnson's private investigator independently interviewed Burgess and testified that she recanted her identification of Johnson, claiming that she only implicated him to collect reward money.

The district court found the Government had established that Johnson was responsible for Burgess's absence. When Johnson argued it had not been established by clear and convincing evidence, the district court ruled the preponderance standard of Rule 804 applied. The Government wisely does not contend that the clear and convincing standard was satisfied.

In Williams's appeal, he contends there should have been a severance. The Government introduced Burgess's statements at trial only against Johnson, not Williams. This was because Williams was not found to have participated in the coercion of Burgess. On cross-examination of one of the Government's witnesses, however, Johnson's attorney elicited statements indicating that Burgess had also identified Williams, albeit not consistently. Williams requested a severance. The district court denied this request and elected instead to give the jury a limiting instruction, admonishing them not to consider Burgess's testimony when assessing Williams's guilt.

The evidence at trial incriminating both Johnson and Williams was strong. Jamal Dunagan, a former Hoover gang member, testified that both Johnson and Williams had confessed to having participated in the robbery-murder. He

also testified that Derrick Maddox, an uncharged co-conspirator, had given him a detailed account of the robbery and subsequent shootout, including the extent of Johnson and Williams's involvement. In addition, the Government introduced evidence that DNA recovered from a wig and latex gloves that were found on the scene matched the DNA profiles of Johnson and Williams respectively.

After nearly four days of deliberation, the jury convicted both defendants for conspiracy, robbery, and discharging a firearm causing death. They each received life sentences.

## CONFRONTATION CLAUSE

Johnson argues that the introduction of Burgess's out-of-court statements to the police violated his confrontation rights because the government failed to produce clear and convincing evidence that he intentionally secured her absence. The Confrontation Clause bars the admission of "testimonial" hearsay when the defendant has not had the opportunity to confront and cross-examine the declarant, but the bar is subject to certain limited exceptions. *Crawford*, 541 U.S. at 59. Burgess's statements in this case were "testimonial" because they were given in front of a grand jury and to police who were conducting an investigation in preparation for trial. *See id.* at 51–52. They were meant to describe what happened. Ordinarily they would not be admissible under the hearsay rules and the protections of the Confrontation Clause, which guarantees a defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI; *see Crawford*, 541 U.S. at 51–52.

A defendant may forfeit confrontation rights and render hearsay rules inapplicable if the defendant is responsible for

the witness's unavailability, i.e., if the defendant "engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." *Giles*, 554 U.S. at 367 (quoting Fed. R. Evid. 804(b)(6)).

The district court found that the government in this case had proven forfeiture by a preponderance of the evidence, referring to the applicable Rule of Evidence, 804(b)(6). Johnson contends that the court should have applied the more demanding clear and convincing standard. Our research tells us that while the history of the exception began on his side, it did not stay there.

The Supreme Court in *Ohio v. Roberts*, 448 U.S. 56 (1980), held that the Confrontation Clause does not bar the admission of hearsay statements that bear the "adequate 'indicia of reliability.'" *Crawford*, 541 U.S. at 40 (quoting *Roberts*, 448 U.S. at 66). The first federal appellate court, after *Roberts*, to consider what standard of proof governs admissibility under the forfeiture exception was the Fifth Circuit in *United States v. Thevis*, 665 F.2d 616 (5th Cir. 1982). There, the court held that, because the clear and convincing standard generally applies whenever the reliability of the evidence is at issue, it should therefore apply in the forfeiture context as well. *Id.* at 631.

Since then, however, every other circuit to consider the issue has declined to follow the Fifth Circuit's reasoning. *See, e.g.*, *United States v. White*, 116 F.3d 903, 912 (D.C. Cir. 1997) (holding that the government must demonstrate forfeiture by a preponderance of the evidence); *United States v. Houlihan*, 92 F.3d 1271, 1280 (1st Cir. 1996) (same). The Second Circuit reasoned in *United States v. Mastrangelo*, 693 F.2d 269 (2d Cir. 1982), that a heightened standard of

admissibility is not necessary under the forfeiture exception because a claim that the defendant intentionally prevented a witness from testifying is not "unusually subject to deception." *Id.* at 273. It further held that the preponderance standard should apply because a more demanding standard would encourage defendants to harm and intimidate witnesses, a "behavior which strikes at the heart of the system of justice itself." *Id*.

In 1997, the Federal Rules of Evidence were amended to include the forfeiture by wrongdoing exception. Fed. R. Evid. 804(b)(6). The Advisory Committee adopted the preponderance standard in order to deter defendants from trying to prevent witnesses from testifying, noting that this was the majority rule among the circuits. The advisory committee note provides: "[t]he usual Rule 104(a) preponderance of the evidence standard has been adopted in light of the behavior the new Rule 804(b)(6) seeks to discourage." Fed. R. Evid. 804(b)(6) advisory committee's note.

In 2004, the Supreme Court issued its seminal opinion in *Crawford*. In *Crawford*, the Court rejected the "indicia of reliability" test in favor of a general rule that testimonial hearsay is not admissible under the Confrontation Clause unless the defendant had a prior opportunity to confront the witness. *Id.* at 59. The Court, however, clarified that it was not also dispensing with the forfeiture exception that it recognized was well established, because that principle is based on equitable concerns and not on measuring the reliability of the evidence. *Id.* at 62.

Johnson argues that, after *Crawford*, the Confrontation Clause requires that there be clear and convincing evidence

of forfeiture before testimonial hearsay may be introduced under the forfeiture exception. Johnson points out that *Crawford* had the effect of limiting the admissibility of testimonial hearsay, so he argues further limitations are appropriate to ensure that constitutional rights are properly protected. Johnson relies on the Fifth Circuit's reasoning in *Thevis*. *See* 665 F.2d at 631. The Court's discussion of the forfeiture exception in *Crawford*, however, is directly contrary to *Thevis*. After *Crawford*, reliability is no longer the touchstone of confrontation analysis. As the Court made clear, the forfeiture exception is consistent with the Confrontation Clause, not because it is a means for determining whether hearsay is reliable, but because it is an equitable doctrine designed to prevent defendants from profiting from their own wrongdoing. *See Crawford*, 541 U.S. at 62. There is no suggestion in *Crawford* that the Court was heightening the standard of proof for exceptions to confrontation guarantees.

The Court's subsequent opinions interpreting the scope of the forfeiture exception also strongly suggest, if not squarely hold, that the preponderance standard applies. In *Davis*, the Court declined to decide the issue of the applicable standard. 547 U.S. at 833. It acknowledged, however, that "federal courts using Federal Rules of Evidence 804(b)(6), which codifies the forfeiture doctrine, have generally held the Government to the preponderance-of-the-evidence standard." *Id.* It further emphasized that *Crawford* "did not destroy the ability of courts to protect the integrity of their proceedings." *Id.* at 834. This sends a strong message that the preponderance standard remains applicable.

The Court most recently addressed the forfeiture exception in *Giles.* The issue was whether the statements of

a defendant who had killed the declarant were admissible under the forfeiture doctrine in the defendant's murder trial. There, the Court concluded that a murder victim's out-of-court statements could not be admitted under the forfeiture exception solely upon a showing that the defendant had caused the victim's death. The Court held that the Confrontation Clause additionally requires "a showing that the defendant intended to prevent a witness from testifying." *Giles*, 554 U.S. at 361. The Government must therefore show that the defendant committed the murder specifically for the purpose of silencing the victim. *Id.* at 361–62. Importantly, the Court reiterated its prior observation in *Davis* that Federal Rules of Evidence 804(b)(6) codifies the forfeiture exception. *Id.* at 367. Its advisory notes tell us to apply the preponderance standard. Fed. R. Evid. 804(b)(6) advisory committee's note.

As Justice Souter's concurrence makes clear, the principle underlying *Giles* was to preserve the distinct functions of the judge in making evidentiary rulings and the jury in determining guilt or innocence. *See Giles*, 554 U.S. at 379 (Souter, J., concurring). The judge determines admissibility by a preponderance of the evidence whereas the jury determines guilt by proof beyond a reasonable doubt. *Id.* Without the need to find an intent to make a witness unavailable, however, the judge in a hearsay ruling could usurp the role of the jury and determine guilt in the first instance by applying the less demanding preponderance standard. *See id.* ("Equity demands something more than this near circularity before the right to confrontation is forfeited, and more is supplied by showing intent to prevent the witness from testifying."). The intent requirement thus ensures that the judge's inquiry is focused on whether the defendant

intended to compromise the integrity of the proceedings, not on whether the defendant committed the underlying offense.

After *Giles*, the Circuit courts that have addressed the forfeiture exception have continued to apply the preponderance standard. In *Perkins v. Herbert*, 596 F.3d 161, 167 (2d Cir. 2010), the Second Circuit reiterated its prior holding that the forfeiture exception is governed by the preponderance standard, although it recognized that the issue was not necessarily dispositive in the case before it, *id.* at 173 n. 9. More recently, the Fourth Circuit stressed that the forfeiture exception should be read broadly in order to prevent defendants from undermining the integrity of the judicial process. *United States v. Jackson*, 706 F.3d 264, 268 (4th Cir. 2013). It has applied the preponderance standard accordingly. *See United States v. Dinkins*, 691 F.3d 358, 383 (4th Cir. 2012) ("Before applying the forfeiture-by-wrongdoing exception, a trial court must find, by a preponderance of the evidence, that . . . the defendant engaged or acquiesced in wrongdoing . . . that was intended to render the declarant . . . .") (internal quotation marks omitted). We agree with these circuits in holding that, in order to introduce evidence under the forfeiture exception, the Government must demonstrate by a preponderance of the evidence that the defendant intentionally secured the declarant's absence.

The district court applied the preponderance standard here. The court did not err in concluding that the Government produced sufficient evidence to demonstrate that Johnson had intentionally prevented Burgess from testifying. There is no serious dispute that the government wanted Burgess to testify and was unable to locate her. The district court concluded that, based on Johnson's actions and the

timing of Burgess's disappearance, it could reasonably be inferred that Johnson had informed other Hoover gang members of Burgess's identity so that they could threaten her against testifying. As the district court noted, Burgess began receiving threats one day after the defense attorneys were permitted to disclose the witness lists to their clients. Johnson's attorney visited him on that same day, and Johnson had previously expressed interest in receiving the witness list.

Johnson contends that Williams could also have been responsible for Burgess's disappearance, but Williams did not receive a visit from his attorney on that day. Further, Williams did not have as strong a motive to threaten Burgess, because she had not consistently identified him. Johnson correctly points out that Burgess had identified others as conspirators. None of them had been charged, however, and there was no evidence that they knew about Burgess. Johnson also suggests that other members of the Hoover gang could have been responsible because knowledge of Burgess's identity may have spread throughout the community upon his counsel's initiation of interviews with witnesses. But presenting a plausible alternative for her disappearance does not negate the government's affirmative evidence that independently supported a determination that the preponderance of the evidence indicates that Johnson was the most likely suspect. On this record, Johnson is clearly the most likely suspect.

Johnson tries to rely on the Second Circuit's opinion in *Perkins*, 596 F.3d 161, where the Second Circuit emphasized that the state had failed to demonstrate forfeiture by a preponderance because it could not explain how the defendant, while incarcerated, had intimidated the witness. *Id.* at 173. Here, however, the Government produced

declarations from a prison guard and an ATF agent describing how inmates communicate with each other and relay those communications to those on the outside. The prison guard further declared that he had seen Johnson engage in such communications. The requisite piece of the puzzle that was missing in *Perkins* was thus present here.

In short, the evidence tended to show that Johnson alone had the means, motive, and opportunity to threaten Burgess, and did not show anyone else did. This was sufficient to satisfy the preponderance standard.

## WILLIAMS'S CONFRONTATION CLAUSE CLAIM

Williams contends a severance was required. The government sought to introduce Burgess's out-of-court statements against Johnson, but not Williams, as there was no evidence that Williams had tried to prevent Burgess from testifying. On cross-examination, however, Johnson's attorney elicited testimony from the investigating officer indicating that Burgess had also identified Williams. Prior to the introduction of this testimony Williams requested a severance on the grounds that this testimony would violate his confrontation rights. The trial judge denied this request and gave the jury a limiting instruction instead. The jury was told, "[y]ou may not consider this evidence in any way as to Defendant Michael Williams. . . . Burgess's testimony through these witnesses are only to be used against Defendant Johnson."

We review this decision for abuse of discretion. *United States v. Stinson*, 647 F.3d 1196, 1205 (9th Cir. 2011). There was none. Johnson's attorney's cross-examination revealed that Burgess's statements regarding Williams were

inconsistent, and she was unable accurately to identify him in a photo-spread.  To the extent that there was any risk that the jury might rely on Burgess's statements when deciding Williams's guilt, the trial judge properly gave a limiting instruction, informing the jury that Burgess's statements were admissible against Johnson only.    There is a strong presumption that jurors follow a court's instructions.  *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247 (9th Cir. 2014).  While some hearsay statements are so "powerfully incriminating" that juries cannot be expected to ignore them, *Bruton v. United States*, 391 U.S. 123, 135 (1968), that is not the case with the statements at issue here.  Burgess's statements were not strongly inculpatory of Williams given their inconsistency, and there is no reason to conclude the limiting instruction was insufficient.  Severance was not required.

## REMAINING ISSUES

Johnson and Williams raised claims of several additional trial errors, but none have merit.  During its rebuttal, the prosecution tried repeatedly to elicit testimony from one of the investigating officers regarding out-of-court statements made by Larry "Big Al" Jordan, one of Johnson's co-conspirators, regarding a possible lead.  The district court sustained the defense's repeated objections to this line of questioning as leading and on hearsay and relevancy grounds. Johnson argues that the prosecutor's leading questions violated his Sixth Amendment confrontation rights and Fifth Amendment due process rights.    Yet no out-of-court statement was ever admitted.  *See Mason v. Yarborough*, 447 F.3d 693, 696 (9th Cir. 2006).  The district court sustained Johnson's objections before the witness could

answer and then later instructed the jury that questions by counsel are not evidence.

The government concedes that the prosecutor should not have pursued leading questions, but Johnson must show more than mere impropriety. He must demonstrate that the prosecutor's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). Here, the prosecutor's questions did not come close to doing so.

Johnson also claims that the prosecution made comments at trial that infringed on his Fifth Amendment right to silence. In its closing argument, the prosecution commented on Johnson's failure to explain the presence of his DNA on a wig that was purportedly worn by one of the assailants. Johnson argues that, in doing so, the prosecution improperly commented on his failure to testify because he was the only one who could have provided such an explanation.

It is well established that a defendant's right to silence prohibits the Government from commenting on his or her decision not to testify. *Griffin v. California*, 380 U.S. 609, 615 (1965). The Government, however, may "call attention to the defendant's failure to present exculpatory evidence more generally." *United States v. Mayans*, 17 F.3d 1174, 1185 (9th Cir. 1994). Here, the prosecution's comments focused on Johnson's failure to present evidence, not his failure to testify. We recognize the difference. *See United States v. Sehnal*, 930 F.2d 1420, 1424 (9th Cir. 1991) ("Our court has developed a fine line separating comment on the defendant's failure to testify and the failure of the 'defense' to explain the evidence.").

Moreover, there were other ways in which Johnson could have rebutted the government's DNA evidence without taking the stand himself. For example, he could have presented expert testimony describing how hair can be easily transferred from one item to another. In fact, Johnson's counsel questioned the government's expert on this very issue. He also could have presented evidence that the government's DNA collection procedures were flawed, or that its tests were inaccurate. The prosecution's comments were therefore not "of such a character that the jury would naturally and necessarily take [them] to be a comment on the failure to testify." *Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir. 1987).

Finally, Williams argues that the district court erroneously admitted inculpatory hearsay statements of a former gang member. The district court permitted Jamal Dunagan to testify about statements allegedly made by Derrick Maddox, an uncharged co-conspirator. Dunagan testified that Maddox had informed him that he was organizing an armored truck heist. The day after the armored truck incident, Maddox again confided in Dunagan and explained how the robbery had been botched after Williams became "trigger happy" and "opened fire on the security guards." The district court concluded that Maddox's out-of-court statements were admissible under the statement against interest exception to the hearsay rule. Fed. R. Evid. 804(b)(3).

Under Rule 804(b)(3), hearsay statements made by an unavailable witness are admissible if they "tended to subject the declarant to criminal liability . . . [and] corroborating circumstances clearly indicate [their] trustworthiness." *United States v. Paguio*, 114 F.3d 928, 932 (9th Cir. 1997).

Williams argues that Maddox's statements were not self-incriminating because Maddox was trying to shift the blame for the killing of the security guard onto Williams. The district court found, however, that Maddox's statements clearly had the potential to expose him to criminal liability. The finding was not clearly erroneous.

The statements did not lack trustworthiness. As the district court noted, Maddox had personal knowledge of the robbery, his statements to Dunagan were given voluntarily and in confidence, and he made them shortly after the robbery had occurred. We have said that similar factors tend to establish statements are sufficiently trustworthy. *See United States v. Boone*, 229 F.3d 1231, 1234 (9th Cir. 2000). The district court did not abuse its discretion.

## CONCLUSION

For the reasons above, the convictions of Johnson and Williams are **AFFIRMED**.