**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

LAWRENCE LORENZO
BLACKSHIRE,

*Defendant-Appellant*.

No. 21-10230

D.C. Nos.
2:19-cr-01033-
SMB-1
2:19-cr-01033-
SMB

OPINION

Appeal from the United States District Court
for the District of Arizona
Susan M. Brnovich, District Judge, Presiding

Argued and Submitted February 5, 2024
Phoenix, Arizona

Filed April 19, 2024

Before:  Marsha S. Berzon, Andrew D. Hurwitz, and
Anthony D. Johnstone, Circuit Judges.

Opinion by Judge Hurwitz

# SUMMARY[*]

## Criminal Law

The panel affirmed Lawrence Blackshire's convictions and sentence for various offenses arising out of an assault on his girlfriend, C.S.

After the government could not locate C.S. to testify at trial, the district court admitted statements she gave to police officers and a nurse.

The panel held that the district court did not err in finding that Blackshire forfeited his right to confront C.S. by causing her unavailability and in admitting C.S.'s out-of-court statements. To admit C.S.'s statements under the forfeiture by wrongdoing rule, the government was required to prove by a preponderance of the evidence that Blackshire intentionally and wrongfully caused C.S.'s unavailability. Blackshire conceded that the record supported an inference that he had the requisite intent, but contended (1) the government failed to prove that his conduct caused C.S.'s absence and (2) there was no wrongdoing because recordings relied upon by the district court show only that he made "peace" with C.S. and told her that she could not be compelled to testify. The panel rejected those arguments. The panel held that circumstantial evidence supports the inference that Blackshire caused C.S.'s absence. As to the wrongfulness requirement, the panel explained (1) the government did not need to show that Blackshire engaged in *criminal* wrongdoing that caused

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

C.S.'s unavailability; and (2) Blackshire's past domestic violence against C.S. is relevant to determining whether Blackshire's actions were wrongful. Against the backdrop of past abuse, Blackshire's recorded statements can reasonably be interpreted as evidencing efforts to coerce, unduly influence, or pressure C.S. into not showing up in court.

The panel held that Blackshire's sufficiency-of-the-evidence challenge on a kidnapping charge, on which he was acquitted, is clearly moot; and that any variance of the kidnapping instruction in this case from *United States v. Jackson*, 24 F.4th 1308 (9th Cir. 2022), could not have prejudiced him on that charge. Any error in an unlawful imprisonment instruction was invited and cannot serve as the basis for reversal.

Affirming the district court's application of a sentencing enhancement under U.S.S.G. § 3C1.1 (2018) for obstruction of justice, the panel held that the district court did not clearly err in concluding that Blackshire unlawfully influenced C.S.

Affirming the district court's application of a sentencing enhancement under U.S.S.G. § 2A2.2(b)(4) (2018) for aggravated assault, the panel held that there was ample evidence from which the district court could have found strangulation, or attempted strangulation, by a preponderance of the evidence.

## COUNSEL

Michele R. Moretti (argued), Law Office of Michele R. Moretti, Lake Butler, Florida, for Defendant-Appellant.

Peter S. Kozinets (argued) and Sharon K. Sexton, Assistant United States Attorneys; Kevin Pooley, Special Assistant United States Attorney; Krissa M. Lanham, Appellate Division Chief; Gary M. Restaino, United States Attorney, District of Arizona; United States Department of Justice, Office of the United States Attorney, Phoenix, Arizona; for Plaintiff-Appellee.

## OPINION

HURWITZ, Circuit Judge:

Lawrence Blackshire was convicted of various offenses arising out of an assault on his girlfriend, C.S. After the government could not locate C.S. to testify at trial, the district court admitted statements she gave to police officers and a nurse. The central issue on appeal is whether the district court erred in finding that Blackshire forfeited his right to confront C.S. by causing her unavailability. We hold that it did not, and—finding Blackshire's remaining arguments unpersuasive—affirm his convictions.

## I.

### A.

In September 2018, Blackshire repeatedly punched and slapped C.S., threw her to the ground, kicked her, grabbed her by the neck, and restrained her when she tried to leave their home. The next morning, after Blackshire kicked C.S.

again, she fled to a neighbor's house and called tribal police, to whom she provided statements about the incident. Medical providers found that C.S. had cranial swelling, abrasions, bruises, and a fractured nose. C.S. met with a forensic nurse, Jill Rable, the following day.

Blackshire was charged under the Indian Major Crimes Act,[1] 18 U.S.C. § 1153, with (1) assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 1153 and 113(a)(6); (2) assault resulting in substantial bodily injury of an intimate partner, in violation of 18 U.S.C. §§ 1153 and 113(a)(7); (3) assault of an intimate partner by strangulation, in violation of 18 U.S.C. §§ 1153 and 113(a)(8); and (4) kidnapping, in violation of 18 U.S.C. §§ 1153 and 1201.

**B**.

Despite multiple attempts, the government was unable to locate C.S. to call her as a witness at trial. In her absence, the government offered her recorded interviews with tribal police providing details of the assault and identifying Blackshire as the perpetrator, arguing that these out-of-court statements were admissible under the forfeiture by wrongdoing exception.

In support of its proffer, the government submitted three recordings of conversations Blackshire had while in jail. In the first, Blackshire told his new girlfriend in a phone call that he would "be just fine" at trial because "[t]here are no victims. They can't find shit." He said no one would find any "victims" because "I already fucking made peace with everybody and shit, everything's fucking cool, and we already discussed the whole fucking not showing up to court

---

[1] Blackshire and C.S. are members of the Salt River Pima-Maricopa Indian Community, and the altercation occurred on the reservation.

thing." In a phone call recorded a few days later, Blackshire asked a woman to tell C.S. that "if the Feds get a hold of her, just play dumb, whatever. Not show up, whatever." In the third recording, he told his new girlfriend during an in-person visit that "people are gonna be lookin' for her. So you need to tell [C.S.'s ex-boyfriend] there he don't know nothing about nothin." Blackshire asked his girlfriend to "find her and tell her – make sure . . . make sure she does not fuckin' . . . no matter what the fuck they tell her they can't fuckin' – they can't force her to go." The district court found that these recordings established "by a preponderance of the evidence that Mr. Blackshire acted intentionally to cause [C.S.'s] unavailability," and admitted the recorded interviews of C.S. by law enforcement under the "forfeiture by wrongdoing" exception to the hearsay rule and Confrontation Clause.

The government also offered statements made by C.S. to Jill Rable, a forensic nurse. Over Blackshire's Confrontation Clause and hearsay objections, the court permitted Rable to recount statements made by C.S. during her examination that Blackshire "punched me all over my head and the sides," "slapped me and threw me to the ground," and "put me in a choke hold and dragged me inside and stepped on my chest and kicked me a few times." Rable also testified that "during the examination, it was disclosed that there was strangulation or suffocation."

At the close of the government's case-in-chief, Blackshire unsuccessfully moved under Federal Rule of Criminal Procedure 29 for acquittal on all counts. A jury later returned guilty verdicts on Counts 1 and 2 as charged; on a lesser included offense of Count 3, simple assault, in violation of 18 U.S.C. §§ 1153 and 113(a)(5); and on a lesser included offense of Count 4, unlawful imprisonment, in

violation of 18 U.S.C. § 1153 and Ariz. Rev. Stat. § 13-1303(A).  Applying Sentencing Guidelines adjustments for obstruction of justice and strangulation, the court sentenced Blackshire to ninety-six months' imprisonment.

## II.

## A.

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.  This "Confrontation Clause" bars testimonial hearsay by an unavailable declarant[2] unless "the defendant has had a prior opportunity to cross-examine" the declarant.  *Crawford v. Washington*, 541 U.S. 36, 59 (2004). However, "[a] defendant may forfeit confrontation rights and render hearsay rules inapplicable if the defendant is responsible for the witness's unavailability."  *United States v. Johnson*, 767 F.3d 815, 820 (9th Cir. 2014).  This "forfeiture by wrongdoing" rule "permit[s] the introduction of statements of a witness who was 'detained' or 'kept away' by the 'means or procurement' of the defendant."  *Giles v. California*, 554 U.S. 353, 359 (2008) (collecting cases).

Federal Rule of Evidence 804(b)(6) "codifies" the forfeiture by wrongdoing doctrine.  *Davis v. Washington*, 547 U.S. 813, 833 (2006).  The Rule allows introduction of hearsay when a party "wrongfully caused—or acquiesced in wrongfully causing—the declarant's unavailability as a witness, and did so intending that result."  Fed. R. Evid.

---

[2] A witness is "unavailable" if the prosecution "made a good-faith effort to obtain [the declarant's] presence at trial."  *Hardy v. Cross*, 565 U.S. 65, 69 (2011) (per curiam) (quoting *Barber v. Page*, 390 U.S. 719, 724–25 (1968)).  Blackshire has not challenged the district court's finding that C.S. was unavailable.

804(b)(6); *see Carlson v. Att'y Gen. of Cal.*, 791 F.3d 1003, 1011 n.6 (9th Cir. 2015) ("[T]o the extent that the Rule does 'codify' the forfeiture doctrine, it must be read 'to permit the admission of those hearsay statements that would be admissible under the constitutional doctrine of waiver by misconduct.'") (emphasis omitted) (quoting *United States v. Cherry*, 217 F.3d 811, 816 (10th Cir. 2000)).

"Supreme Court authority . . . clearly establishes that the forfeiture-by-wrongdoing doctrine applies where there has been affirmative action on the part of the defendant that produces the desired result, non-appearance by a prospective witness against him in a criminal case." *Carlson*, 791 F.3d at 1010. To establish forfeiture by wrongdoing, the government must demonstrate that the defendant *intentionally* "engaged in conduct designed to prevent a witness from testifying." *Giles*, 554 U.S. at 361. "*Causing* the declarant's unavailability with the intent of doing so is critical to the doctrine of forfeiture by wrongdoing." *United States v. Cazares*, 788 F.3d 956, 974 (9th Cir. 2015) (emphasis added).

Blackshire argues that there is a third element to forfeiture by wrongdoing in addition to intent and causation—the actual wrongdoing—and simply "causing a person not to testify at trial cannot be considered the 'wrongdoing' itself." *United States v. Scott*, 284 F.3d 758, 763 (7th Cir. 2002). That is true. Wrongful action is a separate requirement from causation and intent in the Rule, as well as in the traditional hearsay exception. But the government need not show that Blackshire engaged in *criminal* wrongdoing that caused C.S.'s unavailability. *See* Fed. R. Evid. 804(b)(6) Advisory Committee Note to Amendment (1997). Instead, the doctrine acknowledges the principle that, "[w]hile defendants have no duty to assist the

State in proving their guilt, they *do* have the duty to refrain from acting in ways that destroy the integrity of the criminal-trial system." *Davis*, 547 U.S. 833 (emphasis in original). *See also* Fed. R. Evid. 804(b)(6) Advisory Committee Note to Amendment (1997) (noting that the adoption of the exception "recognizes the need . . . to deal with abhorrent behavior 'which strikes at the heart of the system of justice itself'") (quoting *United States v. Mastrangelo*, 693 F.2d 269, 273 (2d Cir. 1982)).

To elucidate the kind of wrongdoing that can trigger forfeiture by wrongdoing, the starting place is the seminal Supreme Court case applying the forfeiture doctrine, *Reynolds v. United States*, 98 U.S. 145 (1878). *Reynolds* explained that statements of an unavailable witness "detained by the means or procurement of the prisoner" and "wrongfully kept away" have long been considered admissible. *Id.* at 158–59 (quoting Lord Morley's Case, 6 How. St. Tr. 769, 771 (H.L. 1666)). Reasoning that "principles of common honesty" required that no one "be permitted to take advantage of his own wrong," the *Reynolds* Court upheld the introduction of out-of-court statements by the defendant's wife after an officer unsuccessfully attempted to serve her a subpoena and the defendant refused to disclose her whereabouts, stating, "[s]he does not appear in this case." *Id.* at 159–60. Because "[t]he accused was himself personally present in court when the showing was made, and had full opportunity to account for the absence of the witness, if he would, or to deny under oath that he had kept her away," he bore the burden of "showing that he had not been instrumental in concealing or keeping the witness away." *Id.* at 160.

Over a century later, the Supreme Court confirmed that "when defendants seek to undermine the judicial process by

procuring or coercing silence from witnesses and victims, the Sixth Amendment does not require courts to acquiesce." *Davis*, 547 U.S. at 833. "[C]oercion, undue influence, or pressure to silence testimony" suffices to establish the requisite wrongdoing. *Scott*, 284 F.3d at 764. More recently, on a "similar set of facts" to *Reynolds*, we upheld the admission of out-of-court statements by a defendant's wife based on evidence that the defendant "actively procured" her failure to appear by leaving their home with her, concealing her whereabouts, and instructing his children "not to call their mother." *Carlson*, 791 F.3d at 1012. This "culpable" conduct showed the defendant's intentional "insulation of the witnesses from the reach of either compulsion or persuasion regarding showing up at trial." *Id.* at 1005, 1013. Through this affirmative act—whether or not it was unlawful—the defendant forfeited his confrontation rights. *Id.* at 1013; *see also United States v. Leal-Del Carmen*, 697 F.3d 964, 974 (9th Cir. 2012) (statement by unavailable witness admissible under Rule 804(b)(6) when the "government was responsible for rendering" the witness unavailable by deporting him).

**B.**

To admit C.S.'s statements under the forfeiture by wrongdoing rule, the government was required to prove by a preponderance of the evidence that Blackshire intentionally and wrongfully caused C.S.'s unavailability. *Johnson*, 767 F.3d at 822–23. We review the district court's factual finding on that issue for clear error. *See United States v. Alahmedalabdaloklah*, 94 F.4th 782, 816 (9th Cir. 2024). Blackshire concedes that the record "supported an inference" that he had the requisite intent because it demonstrates that he "*did not want* C.S. to testify at trial." But he contends that the government failed to prove that his

conduct caused C.S.'s absence. He also argues that there was no wrongdoing because the recordings relied upon by the district court show only that he made "peace" with C.S. and told her that she could not be compelled to testify.

We reject those arguments. With respect to whether Blackshire caused C.S.'s absence, there is sufficient evidence to support the district court's finding. In one recorded conversation, Blackshire told someone that law enforcement would not be able to find "victims" because "we already discussed the whole fucking not showing up to court thing." And, he was recorded asking two other women to tell C.S. not to appear in court. He took "affirmative action," *Carlson*, 791 F.3d at 1010, "*designed*" to prevent C.S. from testifying, *Giles*, 554 U.S. at 359. As in *Johnson*, here "the evidence tended to show that [Blackshire] alone had the means, motive, and opportunity to threaten [C.S.], and did not show anyone else did." *Johnson*, 767 F.3d at 823. Circumstantial evidence supports the inference that Blackshire caused C.S.'s absence.

As to whether the action was wrongful, the domestic violence background is pertinent in establishing that Blackshire applied "coercion, undue influence, or pressure." *Scott*, 284 F.3d at 764. The Supreme Court has indicated that a "domestic-violence context" is "relevant" to the forfeiture analysis, as "[a]cts of domestic violence often are intended to dissuade a victim from resorting to outside help, and include conduct designed to prevent testimony to police officers or cooperation in criminal prosecutions." *Giles*, 544 U.S. at 377. In the context of a murder trial, *Giles* reasoned that "[e]arlier abuse, or threats of abuse, intended to dissuade the victim from resorting to outside help would be highly relevant to this inquiry." *Id. See also Davis*, 547 U.S. at 832–33 (noting that domestic-violence-related crimes are

"notoriously susceptible to intimidation or coercion of the victim to ensure that she does not testify at trial").

Here, the charged crime was not itself intended to prevent C.S. from testifying. But the context of past abuse in this case remains relevant to determining whether Blackshire's actions were wrongful. C.S. told law enforcement that Blackshire had fractured her ribs four months prior to this incident and had previously threatened her "because [she] had called the cops before on him." Furthermore, the charged conduct itself involves Blackshire's punching, slapping, and dragging C.S. in a chokehold, and at one point threatening that "he [would] find [her] and [her] family" if she tried to leave. Against that backdrop, Blackshire's recorded statements need not be understood, as he suggests, simply as efforts at "making peace," or informing C.S. of her right not to testify. Instead, they can reasonably be interpreted as evidencing efforts to "coerc[e], undu[ly] influence, or pressure" C.S. into not showing up in court. *Scott*, 284 F.3d at 764.

Considering all the evidence, the district court did not err in invoking the forfeiture doctrine and admitting C.S.'s out-of-court statements to law enforcement and Nurse Rable.[3]

### III.

Blackshire also challenges the district court's denial of his motion for judgment of acquittal on the kidnapping charge, the jury instructions for kidnapping and unlawful

---

[3] We therefore need not decide whether C.S.'s statements to Rable were testimonial or admissible under Federal Rule of Evidence 803(4) as statements made to a medical provider for the purposes of treatment. *See United States v. Kootswatewa*, 893 F.3d 1127, 1132 (9th Cir. 2018).

imprisonment, and the imposition of sentencing enhancements.

**A.**

We review the denial of a Rule 29 motion de novo, considering "whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Nevils*, 598 F.3d 1158, 1161 (9th Cir. 2010) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We consider the evidence "in the light most favorable to the prosecution." *Id*.

Blackshire's sufficiency-of-the-evidence challenge on the kidnapping charge, on which he was acquitted, is clearly moot. *See United States v. Lawrence*, 189 F.3d 838, 844 n.2 (9th Cir. 1999) (finding Rule 29 motion involving specific aspect of a charge moot when jury convicted on other grounds); *see also United States v. Partida*, 385 F.3d 546, 560 n.10 (5th Cir. 2004) (finding insufficiency claim moot as to an acquitted count).

**B.**

Blackshire contends that the jury instructions for kidnapping and unlawful imprisonment conflict with *Government of Virgin Islands v. Berry*, 604 F.2d 221 (3d Cir. 1979) and *United States v. Jackson*, 24 F.4th 1308 (9th Cir. 2022).

In *Jackson*, decided two years after Blackshire's trial, we held that facts needed to establish kidnapping included:

> (1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the

detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense.

24 F.4th at 1312. This four-factor approach, adopted from *Berry*, 604 F.2d at 227, emphasizes the need to "distinguish facts that constitute kidnapping from those that do not." *Jackson*, 24 F.4th at 1312.

Although we had not yet decided *Jackson* at the time of his trial, Blackshire requested that the district court add to the Ninth Circuit Model Criminal Jury Instruction § 8.1115 (in place prior to June 2019) on kidnapping additional elements based on the *Berry* factors. The district court denied the request, instructing the jury that kidnapping required proof beyond a reasonable doubt that Blackshire "seized, or confined, or kidnapped, or abducted, or carried away" C.S., and that he "held" C.S. "for any benefit." Nevertheless, because Blackshire was acquitted of kidnapping, any variance of the kidnapping instruction in this case from *Jackson* and *Berry* could not have prejudiced him on that charge.

At Blackshire's request, the district court also instructed the jury that, if "not convinced beyond a reasonable doubt that the defendant is guilty of the crime of Kidnapping," it could find Blackshire guilty of unlawful imprisonment if it concluded beyond a reasonable doubt that Blackshire "knowingly restrained" C.S. The court defined "restrain" as "to restrict a person's movements without consent, without legal authority, and in a manner which interferes substantially with such person's liberty by either moving

such person from one place to another, or confining such person." *See* Ariz. Rev. Stat. § 13-1301(2).

On appeal, Blackshire urges that this unlawful imprisonment instruction runs afoul of an animating concern in *Jackson*—the danger of conflating assault-related conduct and restraining conduct whenever an assault involves a period of detention. 24 F.4th at 1311–12; *see also Berry*, 604 F.2d at 227 n.13 (holding the four-factor approach "governs the construction of the lesser included [Virgin Islands] offense of false imprisonment"). However, Blackshire, although clearly aware of the *Berry* factors, proposed the unlawful imprisonment instruction that the district court gave and that he now challenges on appeal. Any error was therefore invited and cannot serve as the basis for reversal. *See United States v. Hui Hsiung*, 778 F.3d 738, 747–48 (9th Cir. 2015) (finding the "case falls squarely within the 'invited error' doctrine" where, "despite having knowledge of the law, the defendants 'proposed or accepted' what they now claim to be 'a flawed instruction'") (quoting *United States v. Perez*, 116 F.3d 840, 842, 845 (9th Cir. 1997) (en banc)).

## C.

Finally, Blackshire challenges the sentencing enhancements for obstruction of justice and strangulation. We review a district court's interpretation of the Sentencing Guidelines de novo, its application of the Guidelines to the facts for abuse of discretion, and its underlying factual findings for clear error. *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc).

The Guidelines permit a two-level increase if a "defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice." U.S.

Sent'g Guidelines Manual ("U.S.S.G.") § 3C1.1 (U.S. Sent'g Comm'n 2018). The enhancement applies to "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." U.S.S.G.§ 3C1.1 cmt. n.4(A). For the same reasons that the forfeiture by wrongdoing standard was met, the district court did not clearly err in concluding that Blackshire "unlawfully influenc[ed]" C.S.

The Guidelines allow for a three-level increase to an aggravated assault sentence when the offense involves "strangling, suffocating, or attempting to strangle . . . a[n] intimate partner, or dating partner." U.S.S.G. § 2A2.2(b)(4) (2018). Blackshire argues that because the jury acquitted him on the strangulation charge, application of this enhancement is unconstitutional. But, "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *United States v. Watts*, 519 U.S. 148, 157 (1997). There was ample evidence from which the district court could have found strangulation, or attempted strangulation, by a preponderance of the evidence.

## IV.

We **AFFIRM** the convictions and sentence.