NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1238-14T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RYAN J. RINKER,

     Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

July 29, 2016

APPELLATE DIVISION

     Submitted February 29, 2016 — Decided July 29, 2016

     Before Judges Messano, Carroll and Sumners.

     On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 13-04-0577.

     Wronko & Loewen, attorneys for appellant (Gilbert G. Miller, of counsel and on the brief).

     Andrew C. Carey, Middlesex County Prosecutor, attorney for respondent (Joie D. Piderit, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

MESSANO, P.J.A.D.

Following a jury trial, defendant Ryan Rinker was convicted of second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (count one), and third-degree theft of that handgun,

N.J.S.A. 2C:20-3(a) (count two).[1]  Defendant was sentenced on count one to a five-year term of imprisonment with a three-year period of parole ineligibility pursuant to the Graves Act, N.J.S.A. 2C:43-6(c), and a concurrent three-year term on count two.[2]

Defendant raises the following points on appeal:

POINT I

THE TRIAL COURT ERRONEOUSLY ADMITTED THE TESTIMONY OF [DEFENDANT'S] FATHER AT THE CO-DEFENDANT'S TRIAL UNDER N.J.R.E. 804(b)(9), A HEARSAY EXCEPTION CODIFYING THE COMMON LAW DOCTRINE OF FORFEITURE BY WRONGDOING, THEREBY ADMITTING TESTIMONIAL HEARSAY WHICH VIOLATED [DEFENDANT'S] CONSTITUTIONAL RIGHT TO CONFRONTATION.

POINT II

THE PROSECUTOR'S OFFICE DETECTIVES VIOLATED [DEFENDANT'S] STATE CONSTITUTIONAL RIGHT TO THE REPRESENTATION BY COUNSEL AT TRIAL BY APPROACHING AND SPEAKING TO HIM IN THE ABSENCE OF COUNSEL DURING THE COURSE OF THE TRIAL.

---

[1] Count three, charging defendant with third-degree violation of regulatory provisions pertaining to firearms, N.J.S.A. 2C:39-10(e), was dismissed prior to trial.  Co-defendant Raphael Edwards was also charged in count one of the same indictment, tried separately before defendant's trial and convicted.  In a separate opinion, we reversed Edwards's conviction.  State v. Edwards, No. A-2248-14 (App. Div. Apr. 20, 2016).

[2] Effective August 8, 2013, the mandatory minimum sentence was increased to forty-two months.  See Pub. L. 2013 c. 113 § 2.

POINT III

NUMEROUS OF THE PROSECUTOR'S REMARKS ON
SUMMATION WERE EGREGIOUSLY IMPROPER AND
SINGULARLY AND CUMULATIVELY DEPRIVED
[DEFENDANT] OF HIS CONSTITUTIONAL RIGHTS TO
DUE PROCESS AND A FAIR TRIAL. (Not raised
below).

POINT IV

THE TRIAL COURT DEPRIVED [DEFENDANT] OF HIS
CONSTITUTIONAL RIGHT TO AN EFFECTIVE
OPPORTUNITY TO PRESENT HIS DEFENSE.

POINT V

IN THE EVENT THE COURT AGREES WITH
[DEFENDANT'S] CONTENTION IN POINT I THAT THE
COURT ERRONEOUSLY PERMITTED THE ADMISSION OF
[DEFENDANT'S FATHER'S] TESTIMONY IN THE CO-
DEFENDANT'S TRIAL, THE COURT AT A MINIMUM
MUST ENTER A JUDGMENT OF ACQUITTAL REGARDING
THE CHARGE THAT [DEFENDANT] UNLAWFULLY
POSSESSED A HANDGUN.

We have considered these arguments in light of the record and
applicable legal standards. We reverse and remand for a new
trial.

I.

The State contended that defendant stole his father's
revolver from the family home and sold it to co-defendant
Edwards. On January 21, 2013, South Brunswick Police Sergeant
Ronald Seaman spoke to defendant's father, who reported his

revolver was stolen from his residence.[3] Later that day, defendant called Seaman from a substance abuse treatment facility in Pennsylvania. Defendant told Seaman he took the loaded gun from his father's dresser and sold it to someone he knew as "R.B." for drugs and money. Defendant said the sale was arranged through text messaging, and that he met R.B. on a street in South Brunswick where the exchange was made.

Seaman met with defendant the following day in Pennsylvania, in the company of defendant's counselor and another detective. After waiving his Miranda[4] rights, defendant consented to a search of his cellphone and also provided R.B.'s phone number. Defendant identified Edwards as R.B. from a photographic array, and Seaman had defendant unsuccessfully attempt to contact Edwards by phone and text message. Seaman recorded defendant's statement, which was played for the jury. Additionally, the parties stipulated to records from the cellphone provider of the sent and received phone calls and text messages from defendant's phone for January 15 through January 31, 2013. Seaman read from a summary of these records which

_____

[3] We note that in overruling defense counsel's hearsay objection to this testimony, the judge specifically determined the statement was not being introduced for its truth. The judge later gave conforming limiting instructions to the jury.

[4] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

allegedly documented the transaction surrounding the handgun. Without objection, the detective was permitted to read and interpret the texts sent from defendant's phone number, and the texts received from Edwards.[5]

State Police records revealed that defendant's father was the registered owner of a Colt .38 caliber Detective Special revolver, the make and model specified in the indictment, and neither defendant nor Edwards were ever issued permits to purchase firearms. Over defendant's objection, Seaman was recalled on the second day of trial and permitted to identify a picture of a Colt .38 caliber Detective Special revolver, albeit not defendant's father's gun, which was never recovered.

The State also called Philip Sassaman as a witness. He knew defendant and Edwards and testified that he would "get high" with Edwards. Sassaman claimed that one or two years earlier, while in a house with Edwards and another friend, he saw Edwards remove a handgun from beneath his mattress.

---

[5] The statements attributed to Edwards were clearly hearsay. We assume they may have been admitted pursuant to N.J.R.E. 803(b)(5), which excepts from the hearsay rule statements made by co-conspirators in furtherance of a conspiracy, but the issue was not addressed since there was no objection. To qualify under that exception, the statement "must have been made in furtherance of the conspiracy," "must have been made during the course of the conspiracy," and "there must be evidence, independent of the hearsay, of the existence of the conspiracy and defendant's relationship to it." State v. Phelps, 96 N.J. 500, 509-10 (1984) (citations omitted).

The State intended to call defendant's father as a witness, but he had not responded to a subpoena mailed to his home. At the close of the first day of trial, the judge rejected the State's argument that Mr. Rinker had been properly served. In the middle of the second trial day, after the State admitted that defendant's father's whereabouts were unknown, the judge apparently granted the prosecutor's request for, as the judge himself later described, "an in camera hearing to determine the efforts made by the [S]tate to secure the attendance of Edward Rinker, material witness in this case, and . . . the progress of that investigation."[6]

On the record, the judge stated that during the in camera hearing, one of the State's witnesses, Detective Sergeant Marc Levy, "said something . . . that caused the prosecutor to change course." The prosecutor now sought to admit defendant's father's testimony at Edwards's earlier trial pursuant to N.J.R.E. 804(b)(9), the forfeiture-by-wrongdoing exception to the hearsay rule. The judge conducted a hearing outside the presence of the jury pursuant to N.J.R.E. 104(a).

Levy testified that in preparing for Edwards's trial several months earlier, the State mailed defendant's father a

---

[6] Whatever testimony was taken during this "in camera" hearing was not included in the appellate record.

subpoena at his home.  Shortly thereafter, Levy spoke with Mr. Rinker regarding his upcoming testimony.  According to Levy, Mr. Rinker stated, "I know I have to come in, but I will not trial prep, and I will not bury my son. . . . I will come in and testify, but I will not bury my son."  Defendant's father subsequently testified at Edwards's trial.

A few weeks before defendant's trial, the State again mailed a subpoena to defendant's father at the same address. Levy testified that based on information obtained from other agencies, Mr. Rinker had not left the country.

Levy also testified that he spoke to Sassaman earlier that morning.  Sassaman told Levy that "he received a phone call, yesterday, from a friend of [defendant's], advising him not to come today, that he didn't have to come.  He was the only one." When asked to clarify, Levy said, "I guess he meant that to be he was the only one coming to testify."

Detective Rodney Blount testified that earlier in the morning, he attempted to serve defendant's father with a material witness warrant.  Blount and another officer were greeted at the front door by defendant, who identified himself by name.  The officers asked defendant if his father was home, and defendant responded that he was not.  When asked if he knew when his father would return, defendant said:  "I know why

you're here.   He's not here.   He's not going to come."   When told to have his father call the officers if he returned, defendant said:   "[d]on't waste your time, he's not coming."

Detective Ryan Tighe testified that he called the Rinker home approximately one month before trial and spoke to Mr. Rinker's wife, who acknowledged having received trial subpoenas for her husband and herself.   Tighe detailed his other efforts to locate Mr. Rinker, including leaving a subpoena at his residence the day before.

The judge found the officers' testimony credible.   He cited Levy's conversation with Sassaman earlier that morning, concluding, "presumably the inference [was] that [Sassaman] was the only one that was really testifying against . . . defendant, and the suggestion being, at least indirectly, that . . . he should not testify in this case."[7]   The judge concluded "there is circumstantial evidence that [defendant] has . . . maybe not

---

[7] No one identified defendant's "friend" who allegedly called Sassaman.   At Edwards's trial, over which the same judge presided, the State produced Sassaman and another individual as witnesses, and both testified to having seen Edwards with a gun on the same occasion.   But, neither Levy nor Sassaman claimed this other person was the same "friend" who spoke to Sassaman the night before his testimony.   We note that in rejecting defense counsel's further argument, the judge listed the reasons for his decision, stating that the State had made "many efforts . . . to locate the witness who did testify in the trial of the co-defendant."   These efforts are not detailed in the record.

directly, but indirectly engaged in wrongdoing . . . that was intended to procure the unavailability of his father as a witness in this case."

In further argument, defense counsel claimed that an individual who was in court had text messaged Sassaman after Levy testified, and Sassaman denied making the statement Levy attributed to him. Defense counsel did not seek any specific relief, such as an adjournment or continuance. Without addressing the issue directly, the judge reiterated the basis for his ruling, which included Levy's testimony, "that he was told by Sassaman that he got a phone call not to . . . show up, that this was . . . defendant's friend, and that he was the only one . . . who would . . . possibly tie the gun, at least in the defendant's mind to . . . the defendant." The judge concluded, "[t]he circumstantial evidence is not compelling, but . . . it does preponderate in the [S]tate's favor." The judge permitted the State to play an audio recording of Mr. Rinker's testimony at Edwards's trial.

Defendant's father had testified that he went to police headquarters to report his handgun was missing on January 21, 2013. He provided police with a range of dates when the gun was taken because those were dates defendant had stayed in his home. Mr. Rinker described his son's drug dependence and treatment

problems. He also testified as to the make and model of the revolver, and the fact that it was loaded. During cross-examination, Mr. Rinker acknowledged reporting to police that he believed defendant had stolen the gun.

Defendant elected not to testify and called no witnesses. The jury returned guilty verdicts on the two counts submitted.

## II.

### A.

In Point I, defendant argues the State failed to prove that he engaged in wrongdoing that was intended to, and did procure his father's absence from trial, predicates for admission of defendant's father's prior testimony under N.J.R.E. 804(b)(9), the so-called forfeiture-by-wrongdoing exception to the hearsay rule. Defendant argues that admission of this hearsay violated his rights under the Sixth Amendment's Confrontation Clause. The State argues otherwise and also contends, alternatively, that any error was harmless. We agree with defendant that his father's testimony was inadmissible hearsay, and the State should not have been permitted to introduce it at trial.

We begin by noting that "'[a] trial court's evidentiary rulings are entitled to deference absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment.'" State v. Nantambu, 221 N.J. 390, 402 (2015) (quoting State v.

Harris, 209 N.J. 431, 439 (2012)). However, when the trial court fails to apply the proper test in analyzing the admissibility of proffered evidence, our review is de novo. See, e.g., State v. Lykes, 192 N.J. 519, 534 (2007) (applying de novo review when trial judge failed to recognize evidence was subject to N.J.R.E. 404(b) analysis).

Defendant's father's testimony from Edwards's trial was hearsay. See N.J.R.E. 801(c) (defining "hearsay" as "a statement, other than one made by the declarant while testifying at the trial . . . , offered in evidence to prove the truth of the matter asserted"). Hearsay is generally inadmissible, except as provided by our Rules of Evidence or some other law. N.J.R.E. 802.

Exceptions to the hearsay rule fall into two broad categories — those not dependent on the declarant's unavailability, see N.J.R.E. 803, and those dependent on the declarant's unavailability. See N.J.R.E. 804. While subsection (a) of Rule 804 lists several circumstances by which a declarant may be deemed "unavailable," only one is relevant here. A declarant "is 'unavailable'" if he "is absent from the hearing because of physical or mental illness or infirmity, or other cause, and the proponent of the statement is unable by process

or other reasonable means to procure the declarant's attendance at trial." N.J.R.E. 804(a)(4).[8]

In State v. Byrd, 198 N.J. 319 (2009), our Supreme Court stated

> that the time ha[d] come for New Jersey to follow the course taken by many other jurisdictions and codify a forfeiture-by-wrongdoing exception to the hearsay rule. That rule w[ould] allow the admission of a witness's statement offered against a party who has engaged, directly or indirectly, in wrongdoing that was intended to, and did, procure the unavailability of the witness.
>
> [Id. at 324.]

As a result, N.J.R.E. 804(b)(9) (the Rule) was drafted by the Court, approved at a Judicial Conference and, in accordance with the Evidence Act of 1960, N.J.S.A. 2A:84A-33 to -44, became effective July 1, 2011. See State v. Rose, 425 N.J. Super. 463, 466-67 (App. Div. 2012) (explaining process).

The Rule provides that

> [s]ubject to Rule 807, the following [is] not excluded by the hearsay rule if the declarant is unavailable as a witness[:]
>
> . . . .

---

[8] This must be contrasted with those situations "when the declarant's unavailability has been procured or wrongfully caused by the proponent of declarant's statement for the purpose of preventing declarant from attending or testifying." N.J.R.E. 804(a) (emphasis added). In those circumstances, the declarant is not "unavailable" for purposes of N.J.R.E. 804's exceptions to the hearsay rule.

A statement offered against a party who has engaged, directly or indirectly, in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness.

[N.J.R.E. 804(b)(9).]

N.J.R.E. 807, in turn, specifically permits the judge to exclude the evidence when "it appears that the proponent's intention to offer the statement in evidence was not made known to the adverse party at such time as to provide that party with a fair opportunity to meet it." The Rule parallels its federal counterpart, Federal Rule of Evidence 804(b)(6), which provides: "[a] statement offered against a party that wrongfully caused -- or acquiesced in wrongfully causing -- the declarant's unavailability as a witness, and did so intending that result." See Byrd, supra, 198 N.J. at 337; see also Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, comment 7 to N.J.R.E. 804(b)(9) (2016).

The Byrd Court clearly prescribed the process by which otherwise inadmissible hearsay could be admitted under the new Rule. Initially,

[w]hen the State intends to introduce a witness's statement through the forfeiture-by-wrongdoing exception to the hearsay rule, it must make known its intention as soon as reasonably practicable. Ordinarily, the State should advise defense counsel and the court as soon as it becomes aware that the defendant's wrongful conduct has made the

> witness unavailable and that it intends to offer the witness's out-of-court statement into evidence. The State must reveal the identity of the witness and the particulars of the statement that will be offered into evidence.
>
> [Byrd, supra, 198 N.J. at 350.]

The judge must conduct a hearing pursuant to N.J.R.E. 104(a) outside the presence of the jury, "to determine whether the witness's out-of-court statement should be admitted into evidence because the defendant engaged in wrongful conduct, making the witness unavailable." Ibid. (emphasis added). A witness is considered unavailable if he cannot be located as a result of defendant's wrongdoing. Id. at 352 (emphasis added).

At the Rule 104 hearing, the State bears the burden of proof by a preponderance of the evidence and "must demonstrate that the defendant by his wrongful conduct, directly or indirectly, caused the witness's unavailability." Ibid. Lastly, the judge must determine that the proffered statement bears "some indicia of reliability"; statements that meet the requirements of N.J.R.E. 803(a)(1)(A) or (B), like defendant's father's testimony in this case, are presumptively reliable.[9] Id. at 352-53.

---

[9] N.J.R.E. 803(a)(1)(A) and (B) except from the hearsay rule prior inconsistent statements of witnesses "contained in a sound recording or in a writing made or signed by the witness in
(continued)

The United States Supreme Court has held that the admission of hearsay testimony pursuant to the forfeiture-by-wrongdoing doctrine does not offend the Sixth Amendment's Confrontation Clause. Id. at 339 (citing Crawford v. Washington, 541 U.S. 36, 62, 124 S. Ct. 1354, 1370, 158 L. Ed. 2d 177, 199 (2004)). "The Sixth Amendment, however, requires that the wrongdoer have as his intent 'the particular purpose of making the witness unavailable' to testify at trial." Id. at 340 (quoting Giles v. California, 554 U.S. 353, 366, 128 S. Ct. 2678, 2687, 171 L. Ed. 2d 488, 500 (2008)). The Rule, "which reflects constitutional precedents, only extinguishes a defendant's confrontation rights to keep a hearsay statement from the jury when the defendant has procured the unavailability of a witness through his wrongful conduct." State v. Cabbell, 207 N.J. 311, 335 (2011).

B.

In Cabbell, the Court addressed the State's alternative argument that a recalcitrant, testifying witness's prior statement was admissible through retroactive application of the Rule. Id. at 333-34. The Court rejected the argument, finding among other things that the Rule was not adopted until five

_____

(continued)
circumstances establishing its reliability or . . . given under oath subject to the penalty of perjury at a trial or other judicial . . . proceeding[.]"

years after the trial, and the trial court never conducted a Rule 104 hearing, never made specific findings that the defendant had engaged in "'wrongdoing'" to silence the witness and never found the witness was unavailable, since she was not. Id. at 334. Moreover, the Court concluded that the statement was admissible under another exception to the hearsay rule, N.J.R.E. 803(c)(5) (past recollection recorded); therefore "the issue . . . [was] not about the admissibility of [the witness's] statement." Ibid.

The Court's dicta in Cabbell is certainly helpful to reiterate the predicates necessary for admission of hearsay pursuant to the Rule. But, no reported decision has squarely addressed the nature and extent of evidence necessary to satisfy the Rule.

We start by recognizing that "[w]e interpret an evidence rule, as we would a statute, by first looking at its plain language." State ex rel. J.A., 195 N.J. 324, 338 (2008). The language of the Rule clearly and unambiguously provides that the proponent of the hearsay, in this case the State, must prove by a preponderance of the evidence three specific predicates: 1) that defendant "engaged, directly or indirectly, in wrongdoing"; 2) that the wrongdoing "was intended to . . . procure the unavailability of the declarant as a witness"; and 3) that the

wrongdoing "did[] procure the unavailability of the declarant as a witness." N.J.R.E. 804(b)(9). As noted, in order to satisfy the Confrontation Clause, the second predicate is critical, because the proponent must demonstrate that the adverse party's wrongdoing was committed with a specific intent, i.e., making the declarant unavailable for trial. Giles, supra, 554 U.S. at 366, 128 S. Ct. at 2687, 171 L. Ed. 2d at 500.

The Federal Rules of Evidence have been the source of many, although not all, of our Rules of Evidence. See, e.g., State v. Harris, 209 N.J. 431, 442 (2012) (noting the 1993 revisions to our rules "adopted the numbering used in the Federal Rules of Evidence and followed those rules in many instances"). We therefore frequently consider as instructive federal precedent construing analogous Federal Rules of Evidence. Parker v. Poole, 440 N.J. Super. 7, 19 (App. Div.), certif. denied, 223 N.J. 163 (2015).

Although our Rule parallels its federal counterpart, it requires the proponent of the hearsay to prove that the adverse party "engaged, directly or indirectly, in wrongdoing," while the federal rule only requires that the proponent demonstrate the adverse party "wrongfully caused -- or acquiesced in wrongfully causing" the witness's unavailability. Fed. R. of

<u>Ev.</u> 804(b)(6) (emphasis added).[10]  For our purposes, we consider the federal precedent without regard to this distinction.

The proponent of hearsay under the federal rule must also prove three predicates prior to its admission.  "To admit a hearsay statement under <u>Rule</u> 804(b)(6), the government must demonstrate: '(1) that the defendant engaged or acquiesced in wrongdoing, (2) that the wrongdoing was intended to procure the declarant's unavailability, and (3) that the wrongdoing did procure the unavailability.'"  <u>United States v. Jonassen</u>, 759 <u>F.</u>3d 653, 661-62 (7th Cir. 2014) (quoting <u>United States v. Scott</u>, 284 <u>F.</u>3d 758, 762 (7th Cir.), <u>cert. denied</u>, 537 <u>U.S.</u> 1031, 123 <u>S. Ct.</u> 582, 154 <u>L. Ed.</u> 2d 448 (2002)), <u>cert. denied</u>, __ <u>U.S.</u> __, 136 <u>S. Ct.</u> 152, 193 <u>L. Ed.</u> 2d 114 (2015); <u>see also</u> <u>United States v. Gray</u>, 405 <u>F.</u>3d 227, 241 (D.C. Cir.) (citing

---

[10] At least one federal court of appeals has held that in order to satisfy the Confrontation Clause, the rule's use of the word "acquiescence" requires proof of "active, culpable conduct, as <u>Giles</u> requires," and not "simple acquiescence in another's decision not to appear or to cause someone else not to appear." <u>Carlson v. AG of Cal.</u>, 791 <u>F.</u>3d. 1003, 1011 (9th Cir. 2015); <u>but see</u>, <u>United States v. Dinkins</u>, 691 <u>F.</u>3d 358, 385 (4th Cir. 2012) ("The term 'acquiesce,' within the meaning of <u>Rule</u> 804(b)(6), encompasses wrongdoing that, while not directly caused by a defendant co-conspirator, is nevertheless attributable to that defendant because he accepted or tacitly approved the wrongdoing."), <u>cert. denied</u>, __ <u>U.S.</u> __, 133 <u>S. Ct.</u> 1278, 185 <u>L. Ed.</u> 2d 214 (2013)).

<u>Scott</u>, <u>supra</u>, 284 <u>F.</u>3d at 762) (same), <u>cert. denied</u>, 546 <u>U.S.</u> 912, 126 <u>S. Ct.</u> 275, 163 <u>L. Ed.</u> 2d 245 (2005).

Federal courts have admitted hearsay under the federal rule without direct proof of a defendant's wrongful conduct. For example, in <u>United States v. Johnson</u>, 767 <u>F.</u>3d 815, 818 (9th Cir. 2014), the defendant was tried for the robbery of an armored truck and the murder of one of its guards. A government informant overheard the defendant and other gang members planning the heist, but, shortly before trial, the government could no longer locate her. <u>Ibid.</u> At a pretrial hearing, the government produced evidence that the witness had received death threats from members of the gang, the defendant's mother had contacted the witness's live-in boyfriend looking for her, the defendant had informed other gang members that the witness was set to testify against him and the threats began the day that the defendant's attorney visited him in prison and likely first disclosed the government's witness list. <u>Id.</u> at 818-19. Prison guards explained how, although in custody, the defendant could communicate with someone outside the institution. <u>Id.</u> at 819.

In affirming the district court's decision to admit the witness's hearsay statements under <u>Rule</u> 804(b)(6), the court of appeals concluded "the evidence tended to show that [the defendant] alone had the means, motive, and opportunity to

19

threaten [the witness], and did not show anyone else did." Id. at 823. See also Jonassen, supra, 759 F.3d at 662 (noting that "[t]he evidentiary foundation for admitting hearsay under Rule 804(b)(6) will almost always be circumstantial").

The Johnson court distinguished an earlier case from the Second Circuit, Perkins v. Herbert, 596 F.3d 161 (2d Cir.), cert. denied, 562 U.S. 954, 131 S. Ct. 318, 178 L. Ed. 2d 253 (2010), and the factual distinctions are relevant to our consideration in this case. In Perkins, a habeas corpus case, the court affirmed the district court's conclusions that the prosecution's proofs for admission of the hearsay statements of a threatened robbery victim who refused to testify at trial were insufficient and admission of the statements violated the Confrontation Clause. Id. at 173. The court found that while the prosecution "demonstrated [the defendant] had a motive to procure [the witness's] silence," it failed to demonstrate that the defendant "took any steps to orchestrate the intimidation of [the witness]," nor did it demonstrate he "had the opportunity to do so," since he was in custody the entire time and prison logs showed no contact with either the witness or a man defendant identified as his accomplice, and who allegedly conveyed the threats and obviously had his own motive to silence the witness. Ibid.

Returning to this case, the judge was certainly permitted to consider circumstantial evidence of defendant's direct or indirect "wrongdoing." However, the State failed to prove by a preponderance of the evidence that defendant "engaged, directly or indirectly, in wrongdoing" that was intended to and did cause Mr. Rinker's unavailability.

Arguably, the only proof that defendant "engaged, directly or indirectly, in wrongdoing," was the alleged phone call an unidentified friend of defendant made to Sassaman the night before the witness testified. Sassaman, who actually testified in this case, was never asked about it, nor was he produced at the Rule 104 hearing. When asked to clarify what Sassaman's hearsay statement meant to him, Levy surmised, "I guess he meant that to be he was the only one coming to testify." Moreover, defense counsel brought to the judge's attention a claim, albeit never fully fleshed out on the record and also hearsay, that Sassaman denied making the statement to Levy.[11]

Assuming arguendo that this evidence was sufficient to show defendant engaged in wrongdoing, it was inadequate to prove that

---

[11] We acknowledge that, in hearings held pursuant to N.J.R.E. 104(a) regarding the admissibility of evidence, the Rules of Evidence do not apply. Ibid. Therefore, the judge's crediting of Levy's testimony regarding Sassaman's hearsay statements was seemingly appropriate. The Byrd Court did not express any opinion to the contrary, and, since, the issue is not before us, we avoid directly addressing it.

the wrongdoing "was intended to, and did, procure the unavailability" of Mr. Rinker as a witness. N.J.R.E. 804(b)(9). Months before defendant's trial, Mr. Rinker reluctantly testified at Edwards's trial and indicated that he had no intention to "bury his son." It is difficult to imagine a clearer indication that Mr. Rinker was not "made unavailable by . . . defendant's wrongdoing," if indeed there was any. Byrd, supra, 198 N.J. at 353. More importantly, there was no evidence that defendant engaged in any wrongdoing designed to make his father unavailable as a witness. In short, the State failed to prove by a preponderance of the evidence the necessary predicates for admission of Mr. Rinker's testimony from Edwards's trial as evidence in defendant's case pursuant to the Rule.

The more difficult issue is whether admission of the evidence requires reversal. The State argues there was substantial evidence otherwise establishing defendant's guilt beyond a reasonable doubt. It cites defendant's admissions and recorded statement, as well as the text messages that describe the negotiations between defendant and Edwards for the sale of the gun.

Defendant contends that without Mr. Rinker's testimony, the evidence was insufficient to prove either charge. In

22

particular, defendant argues that there was insufficient corroboration of his statements, and the balance of the evidence failed to prove he stole or possessed the particular handgun identified in the indictment. Alternatively, defendant argues that the State's evidence was insufficient as a matter of law to prove his guilt on count one beyond a reasonable doubt, because there was no evidence proving the gun was a handgun as defined by N.J.S.A. 2C:39-1(f) and (k), or that it was Mr. Rinker's handgun.

We reject defendant's arguments regarding the legal sufficiency of the balance of the evidence. As to the inadequate corroboration of defendant's admissions, our case law clearly holds that "[a] trial court should properly refuse to grant a judgment of acquittal on these grounds when the State provides 'any legal evidence, apart from the confession of facts and circumstances, from which the jury might draw an inference that the confession is trustworthy.'" State v. Reddish, 181 N.J. 553, 617 (2004) (quoting State v. Lucas, 30 N.J. 37, 62 (1959)). Here, the State introduced the text messages sent by and between defendant and Edwards. To the extent Edwards's statements were independently admissible, they corroborate defendant's admission to both taking his father's gun and selling it for drugs and money. It could reasonably be inferred

that defendant did not have his father's permission. Additionally, official records established that a "Mr. Edward Rinker" was the owner of a Colt .38 caliber Detective Special revolver, and that neither defendant nor Edwards had applied for a gun license. Defendant's admission that he believed the gun was "loaded" was sufficient to sustain the State's burden of proof as to whether the gun was a "handgun" as defined by the Criminal Code.

Nevertheless, we must consider the nature of the erroneous evidence ruling and its effect upon defendant's right to a fair trial. Was the error, as the State contends, harmless?

We have said that "[t]o state the harmless error test, at least with respect to constitutional errors, is easier than to apply it." State v. Pillar, 359 N.J. Super. 249, 276 (App. Div.), certif. denied, 177 N.J. 572 (2003). In a case involving a Confrontation Clause violation, the Court said, "where the trial court commits a constitutional error, that error is to be considered 'a fatal error, mandating a new trial, unless we are "able to declare a belief that it was harmless beyond a reasonable doubt."'" State v. Slaughter, 219 N.J. 104, 118-19 (2014) (quoting Cabbell, supra, 207 N.J. at 338) (in turn quoting Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 828, 17 L. Ed. 2d 705, 710-11 (1967)). "'[T]he question is

whether there is a reasonable possibility that the [error] complained of might have contributed to the conviction.'"  Id. at 119 (alteration in original) (emphasis added) (quoting State v. Dennis, 185 N.J. 300, 302 (2005)).

The State's argument, i.e., without the offending evidence a jury would have still reached the same verdict because of the balance of the evidence, misstates the standard guiding our review.  In Pillar, our colleague, Judge Weissbard, explained the constitutional underpinnings for the "contribution analysis":

> Consistent with the jury-trial guarantee, the question it instructs the reviewing court to consider is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand. Harmless-error review looks, we have said, to the basis on which "the jury actually rested its verdict." The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error. That must be so, because to hypothesize a guilty verdict that was never in fact rendered — no matter how inescapable the findings to support that verdict might be — would violate the jury - trial guarantee.
>
> [Pillar, supra, 359 N.J. Super. at 277-78 (quoting Sullivan v. Louisiana, 508 U.S. 275, 279-80, 113 S. Ct. 2078, 2081-82, 124 L. Ed. 2d 182, 189 (1993)).]

We conclude that the admission of Mr. Rinker's testimony from co-defendant Edwards's trial was not harmless beyond a reasonable doubt because there is a reasonable possibility that it contributed to the guilty verdicts in defendant's case.

This was the testimony of defendant's own father. In her brief summation, the assistant prosecutor stated Mr. Rinker was not produced because the State "can't find him," and thereafter referred to his testimony "under oath" three times. She recited the essential points regarding the theft of the gun, and Mr. Rinker's belief that defendant had stolen it, noting "[t]hose words came out of Edward Rinker's own mouth." Later, she reiterated the testimony as it supported the elements of the theft count. Finally, she cited Mr. Rinker's testimony as corroborating defendant's own statement. In light of the significance of Mr. Rinker's testimony to the elements of both crimes, it is clear to us that the inadmissible evidence contributed to the verdict. We are, therefore, constrained to reverse defendant's conviction and remand the matter for a new trial.[12]

---

[12] There is no authority supporting defendant's argument that he is entitled to a judgment of acquittal because the evidence was inadmissible. See State v. Gibson, 219 N.J. 227 (2014).

[At the court's direction, Section III of its opinion, which concerns discrete issues, has been redacted from the published opinion because it does not meet the criteria set by R. 1:36-2(d) for publication.  The published part of the opinion continues as follows.]

Reversed and remanded for a new trial.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1238-14T3