**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4413-14T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

OREADER CALLAWAY, a/k/a
JUNIOR CALLAWAY, OREADER
JOHNSON, OREADER CALLOWAY,
OREADER CALLAWAY, JR.,

    Defendant-Appellant.
_____

        Submitted March 9, 2017 — Decided June 29, 2017

        Before Judges Hoffman, O'Connor and Whipple.

        On appeal from Superior Court of New Jersey,
        Law Division, Cumberland County, Indictment
        No. 13-08-0662.

        Joseph E. Krakora, Public Defender, attorney
        for appellant (Theresa Yvette Kyles, Assistant
        Deputy Public Defender, of counsel and on the
        briefs).

        Jennifer Webb-McRae, Cumberland County
        Prosecutor, attorney for respondent (Stephen
        C. Sayer, Assistant Prosecutor, of counsel and
        on the brief).

        Appellant filed a pro se supplemental brief.

PER CURIAM

On August 14, 2013, a Cumberland County grand jury returned a nine-count indictment, charging defendant Oreader Callaway with first-degree kidnapping, N.J.S.A. 2C:13-1(b)(1) and N.J.S.A. 2C:13-1(b)(2) (count one); first-degree robbery, N.J.S.A. 2C:15-1(a)(1) or N.J.S.A. 2C:15-1(a)(2) (count two); three counts of third-degree receiving stolen property, N.J.S.A. 2C:20-7(a) (counts three, eight, and nine); fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2) (count four); third-degree terroristic threats, N.J.S.A. 2C:12-3(b) (count five); second-degree burglary, N.J.S.A. 2C:18-2(b)(1) (counts six); and second-degree burglary, N.J.S.A. 2C:18-2(b)(2) (count seven).

The majority of these charges stemmed from a robbery at the home of B.G. in Stow Creek Township. On the morning of June 30, 2012, a man broke into B.G.'s home and entered her bedroom. B.G. could not clearly see the man's face, which he had partially covered with a light-colored handkerchief, but she noticed he wore a light-colored shirt. Brandishing his arm in a manner that suggested he had a weapon, the man threatened to kill B.G. if she did not give him money and jewelry. B.G. gave the man jewelry and led him to the basement to give him money from her purse. He then ordered B.G. to remain in the basement while he searched the rest of her home. After the man left, B.G. ran to her neighbor's home for aid.

B.G.'s neighbor then called the police and described a red truck he had observed outside of B.G.'s home. Police located this truck at a convenience store and learned from a witness that a man had exited the vehicle and was traveling eastward. After a brief search, police located defendant, who matched the provided description, and took him into custody. Police discovered several items of jewelry on defendant's person. Police also recovered a white cloth on the ground next to the truck at the convenience store; DNA testing later matched defendant's buccal swab sample to this cloth.

Defendant filed a motion to suppress evidence recovered from his person at the time of his arrest, arguing his arrest was unlawful. After the court denied defendant's motion, a jury tried and convicted him of second-degree kidnapping, a lesser offense of count one, and counts two, three, five, six, and nine. Defendant's judgment of conviction also shows a conviction on count seven; defendant, however, contends the jury did not return a verdict on this charge.

At sentencing, the judge merged count three into count two, count five into count one, and count seven into count six. On count two, he sentenced defendant to an extended term of lifetime imprisonment, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. He sentenced defendant to terms of ten years in prison

on counts one and six, and five years on count nine, all to run concurrent to count two.

Defendant appealed, and raises the following points of argument:

> POINT I
>
> DEFENDANT'S SUPPRESSION MOTION SHOULD HAVE BEEN GRANTED BECAUSE HE WAS SUBJECTED TO FULL CUSTODIAL ARREST BY AN OFFICER WHO LACKED PROBABLE CAUSE TO BELIEVE THAT DEFENDANT HAD BEEN INVOLVED IN A CRIME. U.S. CONST. AMEND. IV; N.J. CONST. (1947), ART. I, ¶ 7.
>
> POINT II
>
> THE ADMISSION OF THE DECLARATION MADE BY THE NON-TESTIFYING JUVENILE, [J.P.], VIOLATED CRAWFORD V. WASHINGTON BECAUSE THE DECLARATION WAS TESTIMONIAL, [J.P.] WAS NOT UNAVAILABLE TO TESTIFY, AND THERE WAS NO PRIOR OPPORTUNITY FOR THE DEFENSE TO CROSS-EXAMINE HIM. U.S. CONST., Amends. VI, XIV; N.J. CONST. (1947), Art. I, PARAS. 1, 9, and 10.
>
> POINT III
>
> THE EXTENDED TERM SENTENCE OF LIFE, SUBJECT TO THE NO EARLY RELEASE ACT, WAS NOT IMPOSED PURSUANT TO GOVERNING CASE LAW, WAS NOT JUSTIFIED ON THIS RECORD, AND IS GROSSLY EXCESSIVE.
>
> POINT IV
>
> THE CONVICTION ON COUNT VII MUST BE DISMISSED AS THERE WAS NO VERDICT TAKEN REGARDING THAT COUNT.

Defendant also filed a pro se supplemental brief, where he raises the following arguments:

4                                    A-4413-14T2

POINT I

THE BUCCAL SWAB TAKEN ON FEBRUARY 11, 2013[,]
IN THE SALEM COUNTY MATTER SHOULD BE EXCLUDED
IN THE CUMBERLAND COUNTY TRIAL FOR THERE [WAS]
NO ORDER OR A MOTION FILED UNDER 404(B) TO
BRING IN THE BUCCAL SWAB TAKEN ON FEBRUARY 11,
2013[,] UNDER THE SALEM COUNTY INDICTMENT NO.
12-10-656-I.

POINT II

ALL INVESTIGATIVE REPORTS, TESTIMONIES AND
IDENTIFICATIONS INVOLVING TROOPER MCCREERY
SHOULD BE EXCLUDED FROM THE RECORD, FOR THIS
TROOPER TESTIFIED UNDER THREE DIFFERENT NAMES
ON THREE DIFFERENT HEARINGS IN RELATION TO THE
DEFENDANT.

We have reviewed the record in light of defendant's arguments and the applicable law. For the reasons that follow, we affirm defendant's convictions on counts one, two, three, five, six, and nine. However, because we agree with defendant that the jury failed to convict him of count seven in open court, we remand for the trial court to amend defendant's judgment of conviction to reflect a dismissal on count seven.

I.

We begin by addressing the suppression motion. New Jersey State Police Trooper Gerald McCreery[1] testified that on June 30,

---

[1] The transcript from the suppression motion listed Trooper McCreery as "Dean McCreery." However, his first name was listed as "Gerald" at trial. From our review of the transcripts, we are satisfied the motion transcript mistakenly listed the trooper's first name.

2012, he received a report of a burglary involving a red flat-body pickup truck with gas tanks on the back. The vehicle also displayed white lettering on its side that suggested it belonged to a fire department.

While driving towards the crime scene, Trooper McCreery passed a vehicle parked at a convenience store that matched the above description, prompting him to turn around and pull into the store parking lot. The trooper exited his patrol car and approached the vehicle, finding it unoccupied but containing a television and "pillow cases full of merchandise." He also felt the hood of the vehicle, which was still warm.

A patron standing outside of the convenience store then called the trooper over. The patron said that as the trooper passed by in his patrol car, a black male wearing a white shirt and dark jeans exited the truck and "hopped the fence and started heading east in the back yards." The trooper radioed this information to dispatch and remained by the vehicle to await the other police units. Shortly thereafter, Bridgeton police took defendant into custody and brought him back to the convenience store. According to Trooper McCreery, defendant was wearing the exact clothing the patron had described. However, the patron did not remain at the scene and was therefore unable to identify defendant at that time.

After Trooper McCreery viewed defendant, another officer transported him to the police station.

Detective Jason Hovermann of the Bridgeton Police Department testified that he received a report the State Police "were attempting to locate somebody that had committed a robbery." The report described the suspect as "a black, male subject, wearing dark-colored jeans and a white T-shirt," jumping fences between back yards and heading east from the convenience store. Upon turning onto a street near the convenience store, he observed defendant, who matched this description. Defendant was walking but was sweating heavily as if he had been running, which the officer found suspicious because it was early in the morning.

Detective Hovermann ordered defendant to stop and "placed him in handcuffs to detain him, patted him down, and waited for the State police to arrive." The detective did not know whether defendant was armed, but he proceeded to pat down defendant to check for weapons and discovered two hard objects in defendant's rear pockets. He looked inside defendant's pockets and observed the items were loose pieces of jewelry, but he did not remove the items. Detective Hovermann also noted that another man had been walking with defendant, but he did not search or arrest this man because he did not meet the reported description.

Following this testimony, the motion judge denied defendant's motion to suppress, finding reasonable, articulable suspicion existed to justify Detective Hovermann's actions in detaining defendant. Specifically, the judge found defendant's clothing and profuse sweating indicated he was the suspect in question. The judge further determined that Trooper McCreery had probable cause to arrest defendant once police brought him back to the convenience store.

On appeal, we owe deference to the trial judge's factual findings as long as they are supported by sufficient credible evidence presented at the suppression hearing. State v. Gamble, 218 N.J. 412, 424-25 (2014). However, our review of the trial court's legal interpretations is de novo. Id. at 425. Following our review of the facts and applicable law, we find no basis to disturb the judge's decision denying suppression.

We first note the judge appeared to suggest that Detective Hovermann did not arrest defendant but detained him based upon reasonable suspicion. It is well settled that police officers "may conduct an investigatory stop if, based on the totality of the circumstances, the officer had a reasonable and particularized suspicion to believe that an individual had just engaged in, or was about to engage in, criminal activity." State v. Stovall, 170 N.J. 346, 356 (2002) (citing Terry v. Ohio, 392 U.S. 1, 21, 88 S.

Ct. 1868, 1880, 20 L. Ed. 2d 889, 906 (1968)). However, an investigatory stop becomes a de facto arrest where it is more than minimally intrusive. State v. Dickey, 152 N.J. 468, 478 (1998). This inquiry turns on a number of factors, including whether police placed the suspect in handcuffs or confined him in a police car. Id. at 479.

Here, we find Detective Hovermann went beyond an investigatory stop and instead conducted a de facto arrest. The Fourth Amendment to the United States Constitution and Article I, Paragraph Seven of the New Jersey Constitution both "require that arrest warrants be supported by probable cause and that warrantless arrests in public places be supported by the same." State v. Shannon, 222 N.J. 576, 585 (2015), cert. denied, ___ U.S. ___, 136 S. Ct. 1657, 194 L. Ed. 2d 800 (2016); see also State v. Rosario, ___ N.J. ___, ___ (2017) (slip op. at 11) ("An arrest -- the most significant type of seizure by police -- requires probable cause and generally is supported by an arrest warrant or by demonstration of grounds that would have justified one."). Therefore, our inquiry turns on the existence of probable cause to arrest defendant.

"[A] police officer has probable cause to arrest a suspect when the officer possesses 'a well[-]grounded suspicion that a crime has been or is being committed.'" Shannon, supra, 222 N.J.

at 585 (alterations in original) (quoting State v. Basil, 202 N.J. 570, 585 (2010)). "That well-grounded suspicion should be based on the totality of the circumstances as viewed by 'an objectively reasonable police officer.'" Ibid. (quoting Basil, supra, 202 N.J. at 585). The facts and circumstances must show "reasonable ground[s] for belief of guilt." State v. Marshall, 199 N.J. 602, 610 (2009) (quoting State v. O'Neal, 190 N.J. 601, 612 (2007)). "Although several factors considered in isolation may not be enough," when analyzed under the totality of the circumstances, their cumulative effect can support probable cause. State v. Moore, 181 N.J. 40, 46 (2004).

Applying this standard, we find the totality of the circumstances provided Detective Hovermann with probable cause to arrest defendant. Detective Hovermann received a report of a robbery suspect described as a black male wearing a white shirt and dark pants traveling east from the convenience store. Not only did defendant meet this description, he was sweating profusely, which suggested he had been running or exerting himself. We have held that such factors can provide the necessary probable cause to conduct an arrest. See State v. Davis, 204 N.J. Super. 181, 184 (App. Div. 1985), certif. denied, 104 N.J. 378 (1986).

Therefore, because we find Detective Hovermann enacted a lawful arrest, his pat down of defendant and discovery of the

10

jewelry was lawful as a search incident to arrest. See State v.
Minitee, 210 N.J. 307, 318 (2012) ("When the police place an
individual under arrest, they may search his person and the area
within his immediate grasp."). Moreover, the suppression record
shows that Detective Hovermann did not seize the jewelry in
question.

We also find the judge did not err by concluding probable
cause existed for Trooper McCreery to arrest defendant. The recent
robbery report, the patron's tip, and defendant matching the
provided description, all served to establish probable cause. As
such, we find no basis to reverse the denial of defendant's
suppression motion.

## II.

We next address defendant's argument that the State violated
his Sixth Amendment right to confrontation by eliciting hearsay
testimony from Trooper McCreery regarding the description he
received from the patron at the convenience store. We find no
basis to reverse.

During trial, the judge conducted an N.J.R.E. 104 hearing to
determine whether Trooper McCreery's testimony on this issue was
admissible. The trooper stated that approximately eighty seconds
elapsed from the time he spotted the red truck at the convenience
store to the time he spoke to the patron, a juvenile named J.P.

11                                                    A-4413-14T2

The State indicated it did not plan to call J.P. to testify at trial. As such, defendant argued testimony about J.P.'s description of the man who exited the truck was inadmissible hearsay, violating defendant's right to confrontation as a testimonial statement pursuant to <u>Crawford v. Washington</u>, 541 <u>U.S.</u> 36, 124 <u>S. Ct.</u> 1354, 158 <u>L. Ed.</u> 2d 177 (2004).

The judge disagreed, first ruling J.P.'s statements were admissible under the present sense impression hearsay exception, <u>N.J.R.E.</u> 803(c)(1), due to the brief time it took Trooper McCreery to park in the convenience store and speak to J.P. The judge then determined the testimony did not violate defendant's right to confrontation because J.P. was not aware defendant committed a crime, and therefore, his statement did not implicate defendant. However, the judge barred any testimony regarding defendant's alleged actions of jumping over the fence and fleeing from police.

The State then presented the following testimony from Trooper McCreery:

> Q Now, Trooper, I think where we left off yesterday, you were describing arriving at the [convenience store] in Bridgeton City in response to having seen the vehicle matching the description of that broadcast — a vehicle that was part of a fire department, correct?
>
> A Correct.

Q  I believe you also testified that you touched the hood and determined that it was still warm?

A  I looked into it and then touched the hood. Correct.

Q  And then you began to speak to a patron?

A  Correct.

Q  Is it true that as a result of the information that you learned that you determined that you should be looking for a person matching a certain description?

A  That's correct.

Q  And is it also that as a result of the information you learned you decided you should look for that person heading in a particular direction?

A  That's correct.

Q  Okay.  Could you tell the jury what description you were provided?

A  The description I was provided was a black male, white t-shirt, dark jeans, running eastbound.

Defendant now asserts this testimony warrants reversal. Generally, we review the trial judge's decision on the admissibility of evidence for an abuse of discretion. State v. Kuropchak, 221 N.J. 368, 385 (2015).  "However, when the trial court fails to apply the proper test in analyzing the admissibility of proffered evidence, our review is de novo." State v. Rinker, 446 N.J. Super. 347, 358 (App. Div. 2016).  Defendant urges us to

13

review the trial judge's decision de novo, arguing he did not apply the correct standard, described by the Supreme Court in Crawford. Defendant argues that under Crawford, the court should have required J.P. to testify because his statement was "testimonial."

Criminal defendants have the constitutional right to confront the witnesses against them. U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10; State v. Branch, 182 N.J. 338, 348 (2005). "The right of confrontation is an essential attribute of the right to a fair trial, requiring that a defendant have a 'fair opportunity to defend against the State['s] accusations.'" Branch, supra, 182 N.J. at 348 (quoting State v. Garron, 177 N.J. 147, 169 (2003), cert. denied, 540 U.S. 1160, 124 S. Ct. 1169, 157 L. Ed. 2d 1204 (2004)). The Confrontation Clause generally prohibits the use of an out-of-court testimonial hearsay statement unless the person who made the statement is unavailable to testify at trial, and the defendant had a prior opportunity for cross-examination. State v. Cabbell, 207 N.J. 311, 329-30 (2011) (quoting Crawford, supra, 54 U.S. at 59, 124 S. Ct. at 1369, 158 L. Ed. 2d at 197). Testimonial statements generally include statements "given in 'circumstances objectively indicat[ing] that . . . the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.'" Id. at 329

14                                                                          A-4413-14T2

(alterations in original) (quoting <u>Davis v. Washington</u>, 547 <u>U.S.</u> 813, 822, 126 <u>S. Ct.</u> 2266, 2273-74, 165 <u>L. Ed.</u> 2d 224, 237 (2006)).

However, a line of cases in our state law jurisprudence, beginning with <u>State v. Bankston</u>, 63 <u>N.J.</u> 263 (1973), holds that "the hearsay rule is not violated when a police officer explains the reason he approached a suspect or went to the scene of the crime by stating that he did so 'upon information received.'" <u>Id.</u> at 268; <u>see also</u> <u>State v. Luna</u>, 193 <u>N.J.</u> 202, 217 (2007) ("[W]itnesses may testify that they took certain investigative steps based 'upon information received.'" (quoting <u>Bankston</u>, <u>supra</u>, 63 <u>N.J.</u> at 268-69)). Such testimony is admissible "if necessary to rebut a suggestion that [an officer] acted arbitrarily and only if the use of that phrase does not create an inference that the defendant has been implicated in a crime by some unknown person." <u>Branch</u>, <u>supra</u>, 182 <u>N.J.</u> at 352.

Indeed, a testifying officer may not "repeat specific details about a crime relayed to them by a radio transmission or another person without running afoul of the hearsay rule." <u>Luna</u>, <u>supra</u>, 193 <u>N.J.</u> at 217. More importantly, "both the Confrontation Clause and the hearsay rule are violated when, at trial, a police officer conveys, directly or by inference, information from a non-testifying declarant to incriminate the defendant in the crime charged." <u>Branch</u>, <u>supra</u>, 182 <u>N.J.</u> at 350. "[A] police officer

15                                                            A-4413-14T2

may not imply to the jury that he possesses superior knowledge, outside the record, that incriminates the defendant." Id. at 351.

Here, we find Trooper McCreery's testimony appropriately followed the rule of Bankston and its progeny, and therefore, his testimony did not violate the hearsay rules and Confrontation Clause. This testimony was necessary to rebut defense counsel's opening statement, which suggested police acted arbitrarily in arresting defendant, who was merely walking down the street with another black male who police did not question or search. See id. at 352.

Moreover, although the reference to a "patron"[2] was better left unsaid, we discern no implication that the trooper possessed "superior knowledge" outside the record to incriminate defendant. See id. at 351. The "patron" did not identify the man he observed as defendant, nor did he imply defendant was the perpetrator of the crime; instead, he only noted an individual wearing certain clothing exited the truck and proceeded eastward. The prosecutor appropriately elicited this information to show why police took certain investigatory steps.

Because we conclude the trial judge appropriately sanitized the subject testimony to comport with Bankston, he did not err by

---

[2] Following the testimony in question, defense counsel elicited further details about J.P. on cross-examination.

failing to analyze whether this testimony was testimonial under Crawford and its progeny. We discern no basis to reverse on this issue.

### III.

Defendant argues the judge erred by imposing an extended term sentence of lifetime imprisonment, subject to NERA, for his first-degree robbery conviction. Our review of the judge's sentencing decision is limited and deferential. See State v. Grate, 220 N.J. 317, 337 (2015).

At sentencing, the State moved for imposition of a discretionary extended term of lifetime imprisonment. There is no dispute that defendant was eligible for an extended term based on his prior convictions. See N.J.S.A. 2C:44-3(a). However, defendant presents four arguments in support of his position that in deciding to impose an extended term, the judge failed to follow the procedures set forth in State v. Pierce, 188 N.J. 155 (2006), and State v. Dunbar, 108 N.J. 80 (1987). We reject these arguments and affirm defendant's sentence.

"The persistent offender statute, N.J.S.A. 2C:44-3(a), grants the sentencing court discretion to impose an extended sentence where the statutory prerequisites for an extended-term sentence are present." Pierce, supra, 188 N.J. at 161.

> The court may, upon application of the prosecuting attorney, sentence a person who

> has been convicted of a crime of the first, second or third degree to an extended term of imprisonment if it finds . . . [that t]he defendant has been convicted of a crime of the first, second or third degree and is a persistent offender.
>
> [N.J.S.A. 2C:44-3(a)].

The statute defines a "persistent offender" as

> a person who at the time of the commission of the crime is 21 years of age or over, who has been previously convicted on at least two separate occasions of two crimes, committed at different times, when he was at least 18 years of age, if the latest in time of these crimes or the date of the defendant's last release from confinement, whichever is later, is within 10 years of the date of the crime for which the defendant is being sentenced.
>
> [Ibid.]

"To determine whether a defendant meets the definition of a 'persistent offender,' a court must examine the defendant's prior record and his or her age at the time of any prior convictions . . . ." Pierce, supra, 188 N.J. at 162. Defendant first argues the judge erred by failing to make these findings.

However, in discussing his findings on the aggravating sentencing factors, N.J.S.A. 2C:44-1(a), the judge noted defendant "has [twenty-eight] arrests, six disorderly convictions, [thirteen] indictable convictions, three violations of probation[,] and two parole violations." He further noted that defendant was an adult at the time of these prior

18

convictions. As such, although the judge did not specifically list every applicable conviction and defendant's age during each offense, we find he followed the procedures required by Pierce.

Defendant next argues the judge may have improperly "double counted" the convictions he used to trigger defendant's extended term and those he considered in imposing the length of the sentence. As such, defendant asserts the judge violated Dunbar, supra, 108 N.J. at 89-92, because he failed to identify and "segregate[]" the triggering convictions. Defendant also argues the judge may have double counted the triggering convictions in finding aggravating factors N.J.S.A. 2C:44-1(a)(3) (risk of reoffending) and (6) (prior criminal record and seriousness of offenses at issue).[3]

However, we find the judge's sentencing analysis comported with Dunbar, supra, 108 N.J. at 89-92, which permits a judge to take prior offenses into account for both a defendant's eligibility for an extended-term range and the ultimate sentence within that extended-term range that the judge chooses to impose, so long as the judge makes sufficient findings that identify and balance the pertinent aggravating and mitigating factors in

---

[3] The judge also found aggravating factors N.J.S.A. 2C:44-1(a)(1) (nature and circumstances of the offense); (2) (gravity and seriousness of harm); and (9) (need for deterrence). He did not identify any mitigating factors. See N.J.S.A. 2C:44-1(b).

determining at what point within the expanded range the sentence's base term will be fixed.  See also Pierce, supra, 188 N.J. at 168.  We find the judge made such findings on the aggravating factors at issue here.

Defendant's third argument is that the judge erred by failing to make a finding that the extended term was "necessary to protect the public."  Sentencing judges should consider the "need to protect the public" when imposing a sentence within the extended-term range.  Id. at 168-69.  Here, although the sentencing judge did not explicitly use the phrase "protection of the public," he provided the following explanation for finding aggravating factor N.J.S.A. 2C:44-1(a)(9), the need for deterrence:

> I don't know what could possibly deter you at this point in your life.  You've already had virtually every form of punishment that the State knows.  You've had probationary treatment, you've had incarceration, you've been on parole and none of it has dissuaded you from the things that you have done and it has become part of your life, I think, at this point, in time.  That's the way you function. So there is a need for deterrence.

We find these statements were sufficient to show the judge was imposing the extended term to protect the public.

Finally, defendant argues the extended term was "grossly excessive."  However, under, N.J.S.A. 2C:43-7(a)(2), an extended term for a first-degree offense can range from twenty years to life imprisonment.  The sentencing judge did not abuse his

20

discretion by following the law, and therefore, we decline to reverse on this basis.

IV.

Defendant urges us to dismiss his conviction on count seven because the jury did not render a verdict on this charge in open court. R. 1:8-9. We agree and remand for amendment of defendant's judgment of conviction.

Count seven of defendant's indictment charged him with second-degree armed burglary pursuant to N.J.S.A. 2C:18-2(b)(2). Under this statute, burglary rises to a second-degree offense where the actor is "armed with or displays what appear to be explosives or a deadly weapon." Ibid. Conversely, count six of the indictment charged defendant with burglary under N.J.S.A. 2C:18-2(b)(1), which rises to a second-degree offense where the actor "[p]urposely, knowingly or recklessly inflicts, attempts to inflict or threatens to inflict bodily injury on anyone."

However, the burglary section of defendant's verdict sheet only contained language relating to count six, which the transcript of the verdict at trial reflects:

> COURT CLERK: How do you find, as to the charge, that defendant in the course of committing a theft upon [B.G.], did threaten [B.G.] with, or purposely put her in fear of immediate[] bodily injury?
>
> THE FOREPERSON: Guilty.

21

> COURT CLERK: In the course of committing the robbery did defendant use, threaten the immediate use of, or was he armed with, or simulate that he possessed a deadly weapon?
>
> THE FOREPERSON: Yes.
>
> COURT CLERK: How do you find that, as to the charge, that defendant did unlawfully enter the structure . . . with the purpose to commit an offense therein?
>
> THE FOREPERSON: Guilty.
>
> COURT CLERK: Did defendant purposely, knowingly or recklessly threaten to inflict bodily injury on [B.G.]?
>
> THE FOREPERSON: Yes.

The State argues the jury indirectly found defendant guilty of armed burglary by affirming defendant threatened the use of a deadly weapon, and he entered the structure with the intent to commit an offense therein. However, the above colloquy directly tracks the verdict sheet, which first discussed armed robbery in questions 2 and 2A, and then moved to burglary in questions 3 and 3A. The record clearly reflects that the jury failed to render a verdict on count seven.

Where a jury fails to make a finding with respect to guilt or innocence on a specific charge, "a finding cannot be presumed." State v. Millett, 272 N.J. Super. 68, 96 (1994). We have held that where a jury fails to return a verdict on a certain charge, courts should reverse that conviction without remanding for a new

22

trial. See State v. Black, 380 N.J. Super. 581, 591 (App. Div. 2005), certif. denied, 186 N.J. 244 (2006); see also Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 1:8-9 (2017) ("In criminal cases, the defendant is entitled, on double jeopardy grounds, to an acquittal of unconsidered and unreported charges.").

Therefore, we remand this matter for amendment of defendant's judgment of conviction to reflect the dismissal of count seven. Since the judge merged count seven into count six at sentencing, we discern no basis for disturbing defendant's sentence.

V.

Last, we address the arguments defendant raised in his pro se supplemental brief. We note defendant failed to raise these issues before the trial court; generally, we will decline to review issues not raised below unless they involve jurisdiction, implicate the public interest, or are necessary to achieve substantial justice. See State v. Walker, 385 N.J. Super. 388, 410 (App. Div.), certif. denied, 187 N.J. 83 (2006). Such is not the case here. Nonetheless, we briefly discuss these arguments and find they lack merit.

Defendant first argues the DNA buccal swab should have been excluded from evidence because it was obtained under a different indictment in Salem County. Defendant was tried in Salem County,

23

under Indictment 12-10-656, in connection with a Salem County burglary. The record shows that on February 11, 2013, a judge in Salem County entered an order, requiring defendant provide a buccal swab for DNA testing. A DNA sample was later delivered to Cumberland County. In his supplemental appendix, defendant provides two transcripts of an N.J.R.E. 404(b) hearing from Salem County, where the parties briefly discussed the admissibility of the white cloth and the DNA evidence; there is no record reflecting a resolution of the issue, but defendant claims the Salem County judge ruled this evidence was inadmissible.

Defendant now asserts the DNA evidence should be excluded in the instant matter because "there was no order or motion by the prosecutor . . . to bring in the [b]uccal swab DNA comparison from the Salem County [o]rder." Defendant also asserts the swab was "other crimes" evidence, pursuant to N.J.R.E. 404(b), and therefore, the judge in the instant matter should have analyzed its admissibility under the test from State v. Cofield, 127 N.J. 328 (1992). However, defendant points to no law requiring a motion or order to admit DNA evidence obtained under a different indictment. Moreover, this was not "other crimes" evidence because it directly related to the crime at issue. We therefore reject this argument.

Defendant also challenges all testimony and investigative reports from Trooper McCreery, on the basis that the trooper's first name was listed incorrectly on several transcripts from the various proceedings involving defendant. Defendant asserts this constituted perjury and harmful reversible error. We reject this argument, finding any mislabeling of the trooper's name in no way affected the outcome of defendant's trial.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4413-14T2